# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DANIEL PARISI, et al.,                            *

        Plaintiffs,                        *

     v.                                        *          Civil Action No.1:10-cv-00897

LAWRENCE W. SINCLAIR, et al.                      *

        Defendants.                        *

                       *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM IN SUPPORT OF
## DEFENDANT JEFFREY RENSE'S MOTION TO DISMISS
## PLAINTIFFS' COMPLAINT

JoAnne Zawitoski (D.C. Fed. Bar No. 419567)
Semmes, Bowen & Semmes, P.C.
25 South Charles Street, Suite 1400
Baltimore, Maryland 21201
Telephone No. (410) 539-5040
Facsimile No. (410) 539-5223
jzawitoski@semmes.com

*Counsel for Defendant, Jeffrey Rense*

Dated: September 24, 2010

## TABLE OF CONTENTS

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     BRIEF PROCEDURAL HISTORY AS TO MR. RENSE . . . . . . . . . . . . . . . . . . . . . . . 2

III.    BACKGROUND FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.     ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        A.      This Court Lacks Personal Jurisdiction over Mr. Rense . . . . . . . . . . . . . . . . . . 5

        B.      The Defective Summons and Complaint Served on Mr. Rense
                Constituted Insufficient Process Under Fed. R. Civ. P. 12(b)(4). . . . . . . . . . . . 14

        C.      Plaintiffs' Complaint Should Be Dismissed for Failure to State
                a Claim, As Plaintiffs Cannot Prove that Mr. Rense Published
                A False and Defamatory Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

                1.      The Statement that "David Axelrod Allegedly Hiring...Don Parisi"
                        Lacks Defamatory Meaning . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

                2.      Plaintiffs Cannot Allege Sufficient Facts to Establish
                        as False the Statements that "Don Parisi" is a "Internet
                        Porn Merchant" or that Whitehouse.com is an
                        "Otherwise Commercial Porn Site" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

                3.      The Comment that Mr. Parisi "set up an embarrassingly
                        rigged polygraph 'examination'" is Protected Opinion . . . . . . . . . . . . . . 21

V.      CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# TABLE OF AUTHORITIES

<u>**Cases**</u>

<u>Akbar v. New York Magazine Co.</u>, 490 F. Supp. 60, 63 (D.D.C. 1980) . . . . . . . . . . . . . . . . . . . . 6

<u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 19, 20

<u>Bailey v. Mutual of Omaha Ins. Co.</u>, 534 F. Supp.2d 43 (D.D.C. 2008) . . . . . . . . . . . . . . . . . . 16

<u>Barr v. Clinton</u>, 370 F.3d 1196, 1199 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

<u>Bell Atlantic Corp. v. Twombly</u>, 55 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 19

<u>Blumenthal v. Drudge</u>, 992 F.Supp. 44, 53 (D.D.C. 1998) . . . . . . . . . . . . . . . . . . . . . . . . 6, 10, 12

<u>Buying for the Home, LLC v. Humble Abode, LLC</u>,
    459 F. Supp. 2d 310, 325 (D.N.J. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

<u>Copeland-Jackson v. Oslin</u>, 555 F.Supp.2d 213, 216 (D.D.C. 2008) . . . . . . . . . . . . . . . . . . . . 14

<u>Costello v. Ocean County Observer</u>, 643 A.2d 1012,
    1027-1028 (N.J. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

<u>Crane v. Carr</u>, 814 F.2d 758, 762 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

<u>Crane v. N.Y. Zoological Soc'y</u>, 894 F.2d 454, 456 (D.C. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . 5

<u>Dairy Stores, Inc. v. Sentinel Publishing Co., Inc.</u>, 104 N.J. 125, 148,
    516 A.2d 220, 232 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

<u>Disabled Patriots of America, Inc. v. Fu</u>, No. 3:08CV540-RJC-DSC,
    2009 WL 1470687 (W.D.N.C. May 26, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

<u>Doe I  v. State of Israel</u>, 400 F.Supp.2d 86, 121-122 (D.D.C. 2005) . . . . . . . . . . . . . . . . . . . . . 11

<u>Dowd v. Calabrese</u>, 589 F.Supp. 1206, 1210 (D.D.C. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

<u>Environmental Research Int'l v. Lockwood Greene Engr's</u>,
    355 A.2d 808, 813 (D.C. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

<u>Farris v. County of Camden</u>, 61 F.Supp.2d 307 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Gorman v Ameritrade Holding Corp., 293 F.3d 506,
    512-13 & n. 5 (D.D.C. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

GTE New Media Servs. Inc. v. BellSouth Corp.,
    199 F.3d 1343 (D.C. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Heroes, Inc. v. Heroes Found., 958 F. Supp. 1, 5 (D.D.C. 1996) . . . . . . . . . . . . . . . . . . . . . . . 10

Herrmann v. Newark Morning Ledger Co., 48 N.J. Super. 420, 432,
    138 A.2d 61, 67-68 (App. Div. 1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Hill v. Evening News Co., 314 N.J. Super. 545, 552,
    715 A.2d 999, 1002 (App. Div. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20

In re Taylor, 2007 WL 3307008 (Bkrtcy, N.D. Ala,  Nov. 5, 2007) . . . . . . . . . . . . . . . . . . . . . 15

Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Keeton v. Hustler Magazine, 465 U.S. 770, 781 n. 13 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020,
    85 L.Ed. 1477 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Kotlikoff v. The Community News, 89 N.J. 62, 67, 444 A.2d 1086 (1982) . . . . . . . . . . 17, 21, 22

Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994) . . . . . . . . . . . . . . . . . . . 16

Leers v. Green, 24 N.J. 239, 251, 131 A.2d 781 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Lewy v. So. Poverty Law Ctr., No. 08-1971, 2010 WL 2747441,
    at *1 (D.D. C. July 13, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 9, 10, 12, 13

Lohrenz v. Donnelly, 958 F. Supp. 17, 19 (D.D.C. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Lynch v. New Jersey Educ. Ass'n,  161 N.J. 152, 167-168,
    735 A.2d 1129, 1137 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Mallinckrodt v. Sonus Pharmaceuticals, 989 F. Supp. 265,
    271 (D.D.C. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

McFarlane v. Esquire Magazine, 74 F.3d 1296, 1301 (D.D.C. 1996) . . . . . . . . . . . . . . . . . . . . 13

Romaine v. Kallinger, 109 N.J. 282, 289, 537 A.2d 284, 287-88 (1988) . . . . . . . . . . . . . . . . . 18

-iii-

Sherman v. Bordentown Regional School District, 23 Med. L. Rptr. 1170,
        1171 (N.J. Super. Dec. 8, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Sullivan v. Potter, No. Civ. A. 05-00818, 2006 WL 785289,
        at *2-3 (D.D.C. March 28, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Trager v. Berrie, 593 F.Supp. 223, 225 (D.D.C. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

United States v. Ferrari, 54 F.3d 825, 828 (D.C.Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Vaughan v. Nationwide Mut. Ins. Co., 702 A.2d 198, 200 (D.C. 1997) . . . . . . . . . . . . . . . . . . 17

Ward v. Zelikovsky, 136 N.J. 516, 529, 643 A.2d 972 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . 18

Weyrich v. New Republic,  235 F.3d 617 (D.C. Cir. 2001)  . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Wilson v. Grant,  297 N.J. Super. 128, 135-136, 687 A.2d 1009,
        1013 (App. Div. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Worldwide Volkswagon Corp. v. Woodson, 444 U.S. 286, 297 (1980) . . . . . . . . . . . . . . . . . . 13

**Rules and Statutes**

Fed. R. Civ. P. 12(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ. P. 12(b)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 14

Fed. R. Civ. P. 12(b)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 16

Fed. R. Civ. P. 4(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

D.C. Code § 13-423(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**Other Authorities**

Restatement (Second) Conflicts of Law § 150 cmt. e (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Restatement (Second) Conflicts of Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Restatement (Second) of Torts § 566 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| DANIEL PARISI, et al., | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No.1:10-cv-00897 |
| LAWRENCE W. SINCLAIR, et al. | * | |
| Defendants. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM IN SUPPORT OF
## DEFENDANT JEFFREY RENSE'S MOTION TO DISMISS
## PLAINTIFFS' COMPLAINT

### I.  INTRODUCTION

Defendant, Jeffrey Rense, ("Mr. Rense"), by and through undersigned counsel, respectfully submits this Memorandum in Support of his Motion to Dismiss Plaintiffs' Complaint. Plaintiffs, Daniel Parisi ("Mr. Parisi"), Whitehouse.com, Inc. ("WCI"), Whitehouse Network, LLC ("WN"), and White House Communications, Inc. ("WHC"), contend that Mr. Rense is liable to them under various legal theories for alleged defamatory statements contained in the Foreword to a book titled "*Barack Obama & Larry Sinclair: Cocaine, Sex, Lies & Murder?*" ("the Book").  The Book was written and published by Co-Defendants, Lawrence W. "Larry" Sinclair ("Mr. Sinclair") and Sinclair Publishing, Inc.

Mr. Rense now moves for dismissal of Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(2) on the ground that this Court lacks personal jurisdiction over Mr. Rense, who is a citizen of Oregon and who lacks the "continuous and systemic contacts with the District of Columbia"

necessary to confer personal jurisdiction over him under the District of Columbia's long arm statute. In fact, Mr. Rense has never in his life traveled to or been in the District, either professionally or personally.   He has not in the past and does not now regularly do or solicit business in the District, engage in any other persistent course of conduct in the District, or derive substantial revenue from goods used or consumed, or services rendered in the District.

In addition, the process itself served on Mr. Rense was defective, thereby rendering the Complaint subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(4).   The summons prepared by Plaintiffs on or about June 4, 2010 was addressed to Mr. Rense at 1680 Ashland Street, Ashland, Oregon 97520.   See Exhibit A, Summons.   This is the address of a tanning business in a strip shopping center in Ashland that is not affiliated with Mr. Rense. See Exhibit B, Affidavit of Rense at ¶3.   Mr. Rense's residence in Ashland, Oregon is located at 4896 Highway 66, Ashland, Oregon, 97520.   Id. at ¶2.   In fact, Plaintiffs expressly asked this Court for permission to serve Mr. Rense at his 4896 Highway 66, Ashland, Oregon, 97520 home address in their Motion for Service by Publication and for Substituted Service at page 5, and yet Plaintiffs failed to correct Mr. Rense's address on the summons and Complaint before attempting substituted service on Mr. Rense.

Finally, Mr. Rense also moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that Plaintiffs cannot prove that Mr. Rense published a false and defamatory statement concerning them.

## II.  BRIEF PROCEDURAL HISTORY AS TO MR. RENSE

On or about May 28, 2010, Plaintiffs filed a five count Complaint asserting libel, false light invasion/misappropriation of privacy, business disparagement, tortious interference with economic advantage, and civil conspiracy against Mr. Rense and against the other Defendants,  Mr. Sinclair,

Barnes & Noble, Inc. ("BAN"), Barnesandnoble.com, LLC ("BAN.com"), Amazon.com, Inc. ("Amazon"), Books-A-Million, Inc. ("BAM") and Sinclair Publishing, Inc. ("SPI").   As to Mr. Rense, the gravamen of Plaintiffs' claims against him is that they were defamed by the following language in the Foreword to the Book:

> As soon as Larry Sinclair began to make 'noise' on the net and on my program, the Obama power base immediately organized a clearly high-level, multi-faceted assault on him featuring bizarre events like top advisor David Axelrod allegedly hiring internet porn merchant, Don Parisi, of the otherwise commercial porn site, Whitehouse.com, to set up an embarrassingly rigged polygraph 'examination' of Larry which he graciously made himself available for.

See Complaint at ¶33 and Foreword from the Book, attached to Exhibit B, Affidavit of Rense, as Exhibit 1.

Both the Complaint and the summons that Plaintiffs prepared for Mr. Rense on or about June 4, 2010 incorrectly listed his address as: "1680 Ashland Street, Ashland, OR 97520." See Complaint and Exhibit A, Summons.   On July 28, 2010,  Plaintiffs filed a Motion for Service by Publication and for Substituted Service.   As a basis for their Motion, Plaintiffs attached numerous affidavits swearing to several failed attempts to serve process on Mr. Rense.   The Motion requested that the Court order alternative service by publication in Mr. Rense's local newspaper, the Ashland Daily Tidings, for four consecutive weeks and by posting the summons at Mr. Rense's residence of 4896 Highway 66, Ashland, Oregon, 97520. See Plaintiffs' Motion for Service by Publication and for Substituted Service at p. 5.   The Court granted the Motion by Minute Order on July 30, 2010.   No affidavit of service on Mr. Rense has been filed in this case to date.   Plaintiffs have never served Mr. Rense by any means with a summons and Complaint that identifies his correct address.

### III.  BACKGROUND FACTS

Mr. Rense resides at 4896 Highway 66, Ashland, Oregon, 97520 .   See Exhibit B, Affidavit of Rense at ¶2.  Mr. Rense has lived and worked in Oregon for the past eleven (11) years.  Id. at ¶4.  Prior to residing in Oregon, he lived in Santa Barbara, California.  Id. at ¶5.   Mr. Rense has **never** traveled to or been in Washington, D.C. for either business or personal reasons.  Id. at ¶6. Mr. Rense drafted and edited a Foreword to Mr. Sinclair's book in Oregon in or about February 2009 and sent it to Mr. Sinclair by e-mail.   Id. at ¶28.   Mr. Rense did not receive any payment or other remuneration for writing the Foreword.  Id. at ¶27.

Mr. Rense works out of his Oregon home as an internet radio show host.  Id. at ¶10.  The radio show is non-interactive, meaning Mr. Rense does not allow listeners to call the show to ask him or his guests any questions.  Id. at ¶13.   Mr. Rense's internet radio show is not syndicated, and he has no control over whether the show is picked-up and/or broadcasted by any radio station.  Id. at ¶14.  None of the radio stations that air his show are located in the Washington D.C. listening area.  Id.  Moreover, guests on Mr. Rense's internet show are never in the studio with Mr. Rense but call in to the program via telephone so Mr. Rense can speak with them.  Id. at ¶15.  Mr. Rense hears his guests through his earphones and speaks to the guests through his microphone.  Id.  Mr. Rense has never had a guest on his show who has called in from Washington, D.C.  Id.

Mr. Rense's website, Rense.com, is a non-interactive website that is a diverse compilation of news articles that Mr. Rense elects to post in one central location.  Id. at ¶17.   The articles on Rense.com are authored by others and offer opinions on a variety of topics, including the September 11, 2001 attacks on New York City's World Trade Center, paranormal phenomena, pandemics, environment concerns, animal rights, geopolitical developments, energy technologies, and alternative

-4-

medicine.  Id.  Rense.com does not allow people to interact either with Mr. Rense or with each another.  Id. at ¶19.

Although the Rense.com website offers a "radio archive subscription," that subscription simply provides the subscriber with the ability to listen to archived Rense programs and the ability to listen to live Rense broadcasts at an increased modem speed.  Id. at ¶18.  Subscribers have no access to Mr. Rense personally, as Mr. Rense does not and has never accepted e-mail messages from listeners. Id. at ¶20.  If a listener tries to e-mail Mr. Rense, the e-mail is diverted to his webmaster, who is not located in Washington, D.C.  Id.

Mr. Rense never sold the Book or advertised it for sale on Rense.com and has never received any profits or financial gain from sales of the Book.  Id. at ¶ 27 and 29.

## IV.  ARGUMENT

### A.      This Court Lacks Personal Jurisdiction over Mr. Rense.

It is undisputed that Mr. Rense is a non-resident defendant and that he drafted and edited a Foreword to Mr. Sinclair's Book in Oregon.  For this Court to exercise personal jurisdiction over a non-resident defendant such as Mr. Rense, jurisdiction must be proper under the District of Columbia long arm statute **and** be consistent with the demands of due process.  United States v. Ferrari, 54 F.3d 825, 828 (D.C.Cir. 1995); Crane v. Carr, 814 F.2d 758, 762 (D.C. Cir. 1987). Plaintiffs have the burden of establishing that this Court has personal jurisdiction over Mr. Rense by alleging specific facts establishing a *prima facie* case that personal jurisdiction exists over him here. Crane v. N.Y. Zoological Soc'y, 894 F.2d 454, 456 (D.C. Cir. 1990); Lewy v. So. Poverty Law Ctr., No. 08-1971, 2010 WL 2747441, at *1 (D.D. C. July 13, 2010).  Plaintiffs have failed to meet that burden.

In Paragraph 14 of their Complaint, Plaintiffs allege that this Court has long arm jurisdiction over all Defendants, presumably including Mr. Rense.  However, the only provision of the District of Columbia long arm statute that is relevant to Mr. Rense is Section 13-423(a)(4), which provides:

> A District of Columbia court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim for relief arising from the person's...causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the District.

D.C. Code § 13-423(a)(4).

 In order to establish personal jurisdiction under this long arm provision, a plaintiff must make a *prima facie* showing that (1) plaintiff suffered a tortious injury in the District of Columbia; (2) the injury was caused by the defendant's act or omission outside the District of Columbia; and (3) the defendant had one of three enumerated contacts or "plus factors" with the District of Columbia identified in the long arm statute. Lewy, 2010 WL 2747441;  Blumenthal v. Drudge, 992 F.Supp. 44, 53 (D.D.C. 1998), *citing* Trager v. Berrie, 593 F.Supp. 223, 225 (D.D.C. 1984); Akbar v. New York Magazine Co., 490 F. Supp. 60, 63 (D.D.C. 1980).

Plaintiffs must satisfy all three of these requirements **and** must also establish minimum contacts within the confines of due process before this Court can exercise personal jurisdiction over defendant Mr. Rense. Blumenthal, 992 F. Supp. at 53.   However, Plaintiffs in this case have failed to satisfy all three of the requirements of the long arm statute as to Mr. Rense, and they cannot establish that Mr. Rense has the necessary minimum contacts with the District of Columbia consistent with due process to permit the exercise of personal jurisdiction over him.

First, Plaintiffs have failed to meet the first two prongs of the long arm statute, in that they have failed to allege anywhere in their Complaint that they suffered a tortious injury in the District of Columbia and that such injury was caused by Mr. Rense's drafting in Oregon of a Foreword to the Book in or about February 2009.  Indeed, Plaintiffs do not allege in the Complaint that they suffered any injury in the District of Columbia at all.

The only paragraphs of the Complaint that even mention Mr. Rense by  name are paragraph 6, in which Plaintiffs allege that Mr. Rense is a citizen of Oregon, and paragraph 33, in which Plaintiffs allege that Mr. Rense operates a website (Rense.com), has a nationwide radio show, and wrote a Foreword to the Book containing statements that are claimed to be defamatory.  No allegation is made in paragraph 34 of the Complaint, in which all the other defendants are mentioned by name, that Mr. Rense offered for sale or sold the Book anyplace in the United States, including in the District of Columbia.

The only paragraph of the Complaint which expressly alleges that Plaintiffs suffered a specific injury is paragraph 48, in which Plaintiffs claim that:

> 48.   As a direct and proximate result of the defamatory statements of the defendants, the Whitehouse.com website was shut down in 2008.  Whitehouse.com had hoped to sell the site to political/news entities, particularly during the historic 2008 presidential election year, but was unable to do so in light of the taint of Sinclair's defamation. Plaintiffs have actual and special damages in the amount of at least $30,000,000.

However, the injury alleged in paragraph 48 to have occurred in 2008 could not possibly have been caused by Mr. Rense, since he did not write any Foreword to the Book until February 2009.  See Exhibit B, Affidavit of Rense at ¶28.

Paragraphs 63, 69 and 74 of the Complaint contain general allegations that Plaintiffs, or one of them, suffered injury in the form of, *inter alia*, loss of reputation and lost business opportunities, but there is no claim made that Plaintiffs suffered these losses in the District of Columbia.  Indeed, by their own admission, Plaintiffs are citizens of New Jersey and Panama.  Hence, if Plaintiffs were injured by anything in the Book, including the Foreword, arguably that injury could only be felt by them where they lived and worked.  *See* <u>Mallinckrodt v. Sonus Pharmaceuticals</u>, 989 F. Supp. 265, 271 (D.D.C. 1998)(No long arm jurisdiction under subsection (a)(4) of the District's long arm statute where the plaintiffs did not live or work in the District of Columbia and therefore did not suffer any injury in the District that they could not have suffered or did not suffer in any State of the nation where someone may have read the AOL message and reacted negatively toward plaintiffs.).

Not only does the Complaint fail to allege that Plaintiffs suffered an injury in the District of Columbia caused by Mr. Rense, but Plaintiffs have also failed to satisfy the long arm statute's third prong, which requires proof of one or more "plus factors." In other words, Plaintiffs have failed to offer any factual evidence that Mr. Rense regularly does or solicits business in the District, engages in any other persistent course of conduct in the District, or that he derives substantial revenue from goods used or consumed or services rendered in the District.

In their Complaint at paragraph 14, Plaintiffs allege generally with respect to all of the Defendants that, "Defendants have continuous and systemic contacts with the District of Columbia and have been and are conducting and doing business in this District."  However, as is amply demonstrated by Mr. Rense's Affidavit, attached hereto as Exhibit B, this allegation is not true with respect to Mr. Rense. As his Affidavit avers, Mr. Rense does not regularly do or solicit business in the District of Columbia, nor does he engage in any other persistent course of conduct, or derive any

substantial revenue from goods used or consumed or services rendered in the District of Columbia. <u>Id</u>. at ¶¶ at 7-9, 12, 22.

Plaintiffs allege in the Complaint that Mr. Rense has a "nationwide radio show" and that he operates a website, <u>Rense.com</u>.  However, as Mr. Rense's Affidavit indicates, his internet radio talk show is not "nationwide" in the sense that Plaintiffs appear to suggest--that it is syndicated and carried by radio stations that broadcast the program on public airways throughout the country and in the D.C. area.  Rather, the radio show is only carried by a few stations, none of which are within the D.C. listening area.  <u>Id</u>. at ¶14. The only other way that people can listen to Mr. Rense's radio show is by going to his website, <u>Rense.com</u>, and clicking on the link for his radio program, where they can listen to live broadcasts for free in a "podcast" type of format.  <u>Id</u>. at ¶16. Mr. Rense has no idea who is listening to his broadcast by "podcast" at any time and the listeners come to him - he does not go to them.  <u>Id</u>. To his knowledge, none of his guests who have called in to his radio program were located in the District of Columbia at the time of the call.  <u>Id</u>. at ¶15.  Hence, there is no "continuous and systemic" contact by Mr. Rense with the District of Columbia by virtue of his radio show.

In determining whether there has been a "persistent course of conduct" in the District by Mr. Rense through the operation of his website, <u>Rense.com</u>, this Court has held that maintenance of a website accessible to District residents, without more, is not enough to trigger personal jurisdiction. <u>Lewy</u>, 2010 WL 2747441, at *7, *citing* <u>GTE New Media Servs. Inc. v. BellSouth Corp.</u>, 199 F.3d 1343 (D.C. Cir. 2000) ("[P]ersonal jurisdiction surely cannot be based solely on the ability of District residents to access defendants' websites, for this does not by itself show any persistent course of

conduct by the defendants in the District.").  *See also* <u>Mallinckrodt</u>, 989 F.Supp. at 272 (D.D.C. 1998).

Rather, the maintenance of a website accessible to District residents may only demonstrate a "persistent course of conduct" if, for example, the website is interactive, if the defendant regularly distributes gossip/news to D.C. residents by e-mail and U.S. mail, if the defendant solicits and receives contributions from D.C. residents, if the website is available to D.C. residents 24 hours a day, if the defendant travels to D.C. on business related to the website, if the defendant contacts D.C. residents for information for reporting on the website, and if the defendant advertises in D.C. newspapers. *See* <u>Lewy</u>, 2010 WL 2747441, at *7-8, *citing*, *inter alia*, <u>Blumenthal</u>, 992 F. Supp. 44 (D.C.C. 1998) and <u>Heroes, Inc. v. Heroes Found.</u>, 958 F. Supp. 1, 5 (D.D.C. 1996).

In this case, <u>Rense.com,</u> is not an interactive website, as there is almost no exchange of information between Mr. Rense's host computer and internet users.  <u>Id</u>. at ¶17.  Mainly, the <u>Rense.com</u> website acts as a passive compilation of news articles that Mr. Rense makes available in one central location.  The news articles are authored by others and offer opinions on a variety of topics, including the September 11, 2001 attacks on New York City's World Trade Center, paranormal phenomena, pandemics, environmental concerns, animal rights, geopolitical development, energy technologies, and alternative medicine.  <u>Id</u>.

Although the website does offer a "radio archive subscription" for a fee of $5.95 per month, a subscription only allows a subscriber access to Mr. Rense's archived radio programs and the ability to listen to "podcast" radio broadcasts at an increased modem speed. <u>Id</u>. at ¶¶ at 16, 18.  Mr. Rense currently has about 3,020 radio archive subscribers, and he is not aware if any of those subscribers

are in the District of Columbia, as subscribers give only an e-mail address and pay through PayPal when they register.  Id. at ¶18.

Mr. Rense does not have any advertisers from the District of Columbia on his radio show or on his website.  Id. at ¶11. Persons viewing the Rense.com website cannot e-mail Mr. Rense directly with comments.  Id. at ¶19.  If anyone tries to e-mail the website, the e-mail is diverted to the webmaster for Rense.com, who is not located in Washington D.C., and Mr. Rense does not respond to those e-mails.  Id. at ¶20. Mr. Rense also does not contact District of Columbia residents for the content of Rense.com.  Id. at ¶21.

Mr. Rense has never been to the District in his entire life, either for business or for pleasure. Id. at ¶6.  He does not maintain or own a home, office, or any other real property in the District of Columbia, and has neither a telephone, mailing address, nor bank account in the District of Columbia.  Id. at ¶8.  Mr. Rense does not advertise either his radio show or website, Rense.com, in the District, nor does he target District residents for any contributions or fees.  Id. at ¶ ¶11, 21.

In short, there is no evidence of a persistent course of conduct by Mr. Rense in the District through the maintenance of the Rense.com website, and Mr. Rense makes no effort to target District residents through his internet activities.  See Doe I  v. State of Israel, 400 F.Supp.2d 86, 121-122 (D.D.C. 2005)(Defendants' website, which allowed Washington D.C. residents to make contributions and provide contact information, did not provide a basis for personal jurisdiction as it was mainly targeted at a local congregation in New Jersey and not at District residents).

Cases in which a "persistent course of conduct" has been found  in the District based on the maintenance of a website are ones in which the website is fairly to highly interactive.  See Gorman v Ameritrade Holding Corp., 293 F.3d 506, 512-13 & n. 5 (D.D.C. 1996)(Website allowed D.C.

-11-

residents to open accounts on line, transmit funds electronically, sell securities and perform other financial transactions); Lewy, 2010 WL 2747441, at *9 (Website raised $3 million from District of Columbia residents through an on-line solicitation program over the past ten years); Blumenthal, 992 F. Supp. 44, 56-57 (D.D.C. 1998) (Website allowed direct e-mail contact between the web host and District residents, and defendant sent out electronic newsletters by email to internet subscribers that targeted residents of Washington D.C.).  In this case, by contrast, Mr. Rense's website is almost entirely passive, as it does not permit interaction between him and browsers, it collects few if any fees from District of Columbia residents, and the only fees that might be collected are for a "radio archive subscription" that is not itself interactive, but only allows the subscriber to listen to archived Rense broadcasts and listen to live Rense broadcasts at a higher bandwidth.

The mere fact that Mr. Rense's radio broadcasts may occasional feature stories related to Washington D.C. or the U.S. government is not to be considered in the jurisdictional analysis. *See* Lohrenz v. Donnelly, 958 F. Supp. 17, 19 (D.D.C. 1997) (The collection of news in the District for dissemination elsewhere does not constitute "business" or "persistent course of conduct" for the purposes of assessing jurisdiction under the long arm statute.); Environmental Research Int'l v. Lockwood Greene Engr's, 355 A.2d 808, 813 (D.C. 1976)(Defendant's contacts with U.S. government do not factor into the personal jurisdiction analysis.)

Even if there had been a "persistent course of conduct" in the District by Mr. Rense, he would still not be subject to personal jurisdiction here unless this Court also found that the exercise of such jurisdiction would not "offend traditional notions of fair play and substantial justice" as required by the Due Process Clause of the Constitution.  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  While there is no bright line test for determining if the assertion of jurisdiction in a

-12-

particular case is appropriate, the Court must generally consider whether the defendant's "conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." Worldwide Volkswagon Corp. v. Woodson, 444 U.S. 286, 297 (1980).

The Lewy case is instructive on this point. In Lewy, this Court found that it could fairly exercise jurisdiction over corporate defendant Southern Poverty Law Center ("SPLC") because SPLC distributed over a thousand copies of its *Intelligence Report* to Washington D.C. residents, which report contained an alleged defamatory article directed against Lewy, who was a District of Columbia resident. Lewy, 2010 WL 2747441, at *10.

By contrast, the Lewy Court found that it could not fairly exercise personal jurisdiction over the senior editor of the *Intelligence Report,* Mr. Holthouse, in Washington D.C., holding that the jurisdictional contacts for the author of an alleged defamatory article must go beyond the alleged defamatory conduct. Lewy, 2010 WL 2747441, at *11, citing McFarlane v. Esquire Magazine, 74 F.3d 1296, 1301 (D.D.C. 1996). The Court found that Mr. Holthouse's telephone call to an individual in D.C. in connection with the alleged defamatory article, his writing of other articles for national publications that are distributed in the District, and his travel to the District four times between 2000 and 2008 were not a sufficient basis to find that Holthouse reasonably anticipated being haled in to court in the District in connection with the alleged defamatory article or that he engaged in a "persistent course of conduct" in the District. Id.

Like Mr. Holthouse in the Lewy case, Mr. Rense did not reasonably anticipate being haled into a District of Columbia Court merely by virtue of drafting a Foreword that Plaintiffs Parisi and Whitehouse.com claim was directed at them, as New Jersey citizens. The fact that the Foreword "[wa]s circulated throughout the nation, including the District, hardly constitutes doing or soliciting

business, or engaging in a persistent course of conduct, *within* the District." <u>Copeland-Jackson v.</u>

<u>Oslin</u>, 555 F.Supp.2d 213, 216 (D.D.C. 2008), *citing* <u>Keeton v. Hustler Magazine</u>, 465 U.S. 770, 781

n. 13 (1984) (emphasis in original).

In short, Mr. Rense does not have the kind, quality, and number of contacts with the District

that should fairly subject him to jurisdiction here  under the Due Process clause of the Constitution,

and the Complaint against him should be dismissed.

**B.      The Defective Summons and Complaint Served on Mr. Rense
Constituted Insufficient Process Under Fed. R. Civ. P. 12(b)(4)**.

Fed. R. Civ. P. 4(a) requires that a complaint and summons "be directed to the defendant."

This is a separate requirement from the mere identification of the parties, which is also required.

Here, although the Plaintiffs' summons and Complaint identifies Jeffrey Rense by name, they are

not "directed to" Jeffrey Rense.  Both the summons and the Complaint are improperly directed to

the address "1680 Ashland Street, Ashland, OR 97520."  See Complaint and Exhibit A, Summons.

 This address is not one with which Mr. Rense is affiliated. It is the address for "Tan Ashland," a

commercial tanning parlor located in Ashland, Oregon.  At all relevant times, Mr. Rense's address

and dwelling has been "4896 Highway 66, Ashland, Oregon."  See Exhibit B, Affidavit of Mr. Rense

at ¶2.

In Plaintiffs' Motion for Substituted Service on Defendant Jeffrey Rense and Memorandum

in Support, the Plaintiffs requested that the Court grant them permission to use alternative means to

serve Mr. Rense, including "posting a copy of the Process at Mr. Rense's address, 4896 Highway

66, Ashland, Oregon."  See Plaintiffs' Motion for Substituted Service at p. 5.  Despite this fact,

neither the Complaint nor the summons was ever changed to reflect Mr. Rense's correct address before substituted service was attempted.

Process is deemed to be insufficient if it is directed to the wrong address for a defendant, in violation of Fed. R. Civ. P. 4(a),  and this Court would be justified in dismissing the Plaintiffs' Complaint on that basis.  *See* <u>Disabled Patriots of America, Inc. v. Fu</u>, No. 3:08CV540-RJC-DSC, 2009 WL 1470687 (W.D.N.C. May 26, 2009) (Dismissal granted where summons was defective because it was directed to defendant Fu at an address that was not her address or dwelling.  Even if the defendant had notice of the action, actual notice is not a valid substitute for service when the service does not comply with the statute.); <u>In re Taylor</u>, 2007 WL 3307008 (Bkrtcy, N.D. Ala,  Nov. 5, 2007)(Dismissal appropriate for insufficiency of process where summons was defective because it identified incorrect address for defendant.) *Cf*. <u>Sullivan v. Potter</u>, No. Civ. A. 05-00818, 2006 WL 785289, at *2-3 (D.D.C. March 28, 2006)(Complaint subject to dismissal without prejudice pursuant to Fed. R. Civ. P. 12(b)(5) where plaintiff put wrong summons in envelope with defendant's copy of complaint, but plaintiffs allowed instead to have additional time to perfect service.)

In this case, Plaintiffs clearly knew the correct home address for Mr. Rense before attempting substituted service on him, and yet they have not used it.  Thus, if Plaintiff's Complaint is not dismissed for lack of personal jurisdiction over Mr. Rense, then Plaintiffs' Complaint should be dismissed for insufficient process, and this Court should direct the Plaintiffs to re-file their Complaint and to serve proper and correct process upon Mr. Rense.

**C.    Plaintiffs' Complaint Should Be Dismissed for Failure to State
a Claim, As Plaintiffs Cannot Prove that Mr. Rense Published
A False and Defamatory Statement.**

A motion pursuant to Fed. R. Civ. P. 12(b)(6) is properly granted "if the plaintiff fails to plead 'enough facts to state a claim for relief that is plausible on its face.'" Bailey v. Mutual of Omaha Ins. Co., 534 F. Supp.2d 43 (D.D.C. 2008) (*quoting* Bell Atlantic Corp. v. Twombly, 55 U.S. 544 (2007)); *see also* Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'…Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'") (internal citations omitted).

In considering a Fed. R. Civ. P. 12(b)(6) motion, this Court must accept all well-pled allegations as true and construe the facts and reasonable inferences derived therefrom in the light most favorable to the Plaintiffs.  Barr v. Clinton, 370 F.3d 1196, 1199 (D.C. Cir. 2004).  However, this Court "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint," nor must it "accept legal conclusions cast in the form of factual allegations." Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).

To prevail on their claim for libel, Plaintiffs must show "(1) that Defendant made a defamatory statement of fact; (2) concerning the Plaintiff; (3) which was false; (4) which was communicated to persons other than the Plaintiff; and (5) fault."  Buying for the Home, LLC v. Humble Abode, LLC, 459 F. Supp. 2d 310, 325 (D.N.J. 2006).   For their claim against Mr. Rense, Plaintiffs claim as defamatory the following sentence from the Foreword of the Book:

> … the Obama power base immediately organized a clearly high-level,
> multi-faceted assault on him featuring bizarre events like top adviser
> David Axelrod allegedly hiring internet porn merchant, Don Parisi,

of the otherwise commercial porn site, Whitehouse.com, to set up an embarrassingly rigged polygraph 'examination' of Larry which he graciously made himself available for.

See Complaint at ¶26.  Plaintiffs claim that this passage is false because allegedly (1) they never entered an agreement with David Axelrod or the Obama campaign or conspired with them; (2) Parisi is not a pornographer and Whitehouse.com did not contain pornographic material "during the relevant time period;" and (3) Parisi did not "rig" Sinclair's polygraph examinations.  See Complaint at ¶39.  As shown below, none of these statements is actionable in defamation because the statements lack defamatory meaning, cannot be established as false, or are protected opinion.[1]

### 1.     The Statement that "David Axelrod Allegedly Hiring...Don Parisi" Lacks Defamatory Meaning

As a threshold matter, under applicable New Jersey law, Plaintiffs must establish that "the language used is reasonably susceptible of a defamatory meaning."  Kotlikoff v. The Community News, 89 N.J. 62, 67, 444 A.2d 1086 (1982).[2]  "Whether the meaning of a statement is susceptible of a defamatory meaning is a question of law for the court.  In determining whether the statements

---

[1]Defendant Jeffrey Rense is also protected by a number of other constitutional defenses, including a lack of any proof, let alone the First Amendment-mandated standard of clear and convincing proof, that he acted with actual malice, but he is not raising those defenses at this time, because Plaintiffs cannot establish the threshold issue that the Foreword contains false and defamatory statements.

[2]This Court must look to the choice of law rules prevailing in the District of Columbia for the substantive law of this case.  See Weyrich v. New Republic, 235 F.3d 617 (D.C. Cir. 2001);  see Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).  The District Columbia employs the governmental interest analysis test of the Restatement (Second) Conflicts of Law.  Vaughan v. Nationwide Mut. Ins. Co., 702 A.2d 198, 200 (D.C. 1997).  Applying that test to defamation actions, "[t]he weight of authority considers that the law to be applied is...[that of] the place where the plaintiff suffered injury by reason of his loss of reputation." Dowd v. Calabrese, 589 F.Supp. 1206, 1210 (D.D.C. 1984), citing Restatement (Second) Conflicts of Law § 150 cmt. e (1971).  Given the nature of the Plaintiffs' livelihood, and the fact that three of the four Plaintiffs are citizens of New Jersey, have their principal places of business in New Jersey, and have been located in New Jersey at all times relevant to this lawsuit, New Jersey's substantive law of defamation governs Plaintiffs' claims.  See Weyrich, 235 F.3d 617 (D.C. Cir. 2001); see Complaint at ¶¶1, 2, 3.

are defamatory, [the court] must consider the content, verifiability, and context of the challenged statements." Ward v. Zelikovsky, 136 N.J. 516, 529, 643 A.2d 972 (1994) (citations omitted). Under New Jersey law, a "defamatory statement is one that is false and 'injurious to the reputation of another' or exposes another person to 'hatred, contempt or ridicule' or subjects another person to 'a loss of the good will and confidence' in which he or she is held by others." Romaine v. Kallinger, 109 N.J. 282, 289, 537 A.2d 284, 287-88 (1988) (citing Leers v. Green, 24 N.J. 239, 251, 131 A.2d 781 (1957)).

   "Courts begin their review to determine whether a statement is susceptible of a defamatory meaning by looking 'to the fair and natural meaning which will be given it by reasonable persons of ordinary intelligence.'" Ward, 136 N.J. at 529, 643 A.2d at 978. The "court also must evaluate the content of the statement in the context of the publication as a whole." Hill v. Evening News Co., 314 N.J. Super. 545, 552, 715 A.2d 999, 1002 (App. Div. 1998). "The court must consider all the words used not merely a particular phrase or sentence." Wilson v. Grant, 297 N.J. Super. 128, 135-136, 687 A.2d 1009, 1013 (App. Div. 1996).

   The reference in the Foreword to David Axelrod of the Obama campaign "allegedly hiring" "Don Parisi" is not capable of a defamatory meaning.[3]  See Foreword from the Book, attached to Exhibit B, Affidavit of Rense, as Exhibit 1.  Contrary to Plaintiffs' contentions, the Foreword does not state that Plaintiffs conspired with Mr. Axelrod or the Obama campaign.  The Foreword merely stated that "Don Parisi" was "allegedly" hired by Mr. Axelrod.  In any event, a claim that Mr.

_____

[3]The Foreword identifies "Don Parisi" rather than Plaintiff, Daniel Parisi. This also raises questions, not addressed in this Memorandum,  as to whether the allegedly defamatory statements were "of and concerning" Plaintiff Daniel Parisi.

Axelrod, a top adviser to the Obama campaign, allegedly hired Mr. Parisi does not expose Mr. Parisi to "hatred, contempt or ridicule."  In fact, when viewed objectively, a claim that Mr. Parisi was associated with Mr. Axelrod, a then top adviser to the future President of the United States, reflects positively on Mr. Parisi.  As the Complaint fails to identify any facts establishing that being hired by an Obama aide would cause one to be subjected to hatred, contempt, or ridicule, the statement lacks a defamatory meaning as a matter of law.

> **2.**    **Plaintiffs Cannot Allege Sufficient Facts to Establish as False the Statements that "Don Parisi" is a "Internet Porn Merchant"or that Whitehouse.com is an "Otherwise Commercial Porn Site"**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 129 S.Ct. at 1949 (*quoting* Twombly, 55 U.S. at 570).  Mr. Parisi does not deny that he has engaged in the sale of pornography. The Complaint is carefully worded to state that Mr. Parisi "has not produced, created, or made any pornographic material."  See Complaint at ¶44(h).  It does not allege, nor can it, that Mr. Parisi did not "sell" pornography, as Mr. Parisi owned and operated infamous websites that published and sold pornography for many years.  This omission is significant and, under the heightened pleading standards commanded by the Supreme Court in Iqbal and Twombly, Parisi's conclusory allegation that the "internet porn merchant" statement is false is insufficient as a matter of law.  Mr. Parisi fails to allege (and cannot allege) facts that plausibly establish that he was not in the business of selling pornography.

Similarly, Plaintiffs fail to allege sufficient facts to establish the falsity of the statement that Whitehouse.com is an "otherwise commercial porn site."  Plaintiffs do not deny, nor can they, that

for many years Whitehouse.com was an infamous website displaying pornography.  Instead, the Complaint alleges that "*[d]uring the relevant time period*, Whitehouse.com did not contain pornographic material." See  Complaint at ¶44(i) (Emphasis added).  The law does not permit minor misstatements or technicalities to form the basis of a libel claim.  *See* Herrmann v. Newark Morning Ledger Co., 48 N.J. Super. 420, 432, 138 A.2d 61, 67-68 (App. Div. 1958) ("The rule is that a false statement in the publication which is immaterial to, or does not go to the gist or sting of the libel does not render an otherwise true statement defamatory."), cited recently with approval in Costello v. Ocean County Observer, 643 A.2d 1012, 1027-1028 (N.J. 1994).  In other words, "the defendant need not justify immaterial details or mere expressions of abuse which do not add to its sting, or which would produce no effect on the mind of the reader different from that produced by the substantial part justified."  Id.; *see also* Hill, 314 N.J. Super. at 552, 715 A.2d at 1002 ("A plaintiff does not make a *prima facie* claim of defamation if the contested statement is essentially true.") (Emphasis added.)

The effect on the mind of the reader here would be no different if the literal truth had been written - that is, for many years Mr. Parisi operated Whitehouse.com as a commercial pornography website but apparently no longer does.  Accepting Plaintiffs' contention that Whitehouse.com no longer disseminates pornography does not materially affect the gist or sting of the charge that Whitehouse.com operated for many years an infamous pornography website.  *See* Herrmann, 48 N.J. Super. at 432, 138 A.2d at 67.  Because Plaintiffs have not alleged facts that plausibly establish that the statement describing Mr. Parisi's Whitehouse.com as an "otherwise commercial porn site" is not substantially true, the claim for libel based on this statement cannot survive a motion to dismiss.  *See* Iqbal, 129 S. Ct. at 1949.

### 3.  The Comment that Mr. Parisi "set up an embarrassingly rigged polygraph 'examination'" is Protected Opinion

Plaintiffs do not deny that Mr. Parisi set up a polygraph examination for Mr. Sinclair. Indeed, Plaintiffs expressly allege that Mr. Parisi contacted Mr. Sinclair in or about February 2008 and offered him $10,000.00 to take polygraph examinations.  See Complaint at ¶23.  Plaintiffs further allege that Mr. Parisi offered Sinclair $100,000.00 if the polygraph exams showed that Mr. Sinclair was telling the truth.  Id.  Whitehouse.com alleges that it later paid Mr. Sinclair $20,000.00 as part of a modified agreement.  See Complaint at ¶25.  The excerpts from the Book cited in the Complaint also describe how Mr. Parisi arranged the polygraph examinations and how Mr. Sinclair was informed that the examinations were rigged.  See, e.g., Complaint at ¶32.

The question of whether an allegedly defamatory statement is a statement of fact or an expression of opinion is a question of law for the Court.  Kotlikoff, 89 N.J. at 67, 444 A.2d at 1088. Pure opinion "is found when the maker of the comment states the facts on which he bases his opinion of the plaintiff and then states a view as to the plaintiff's conduct, qualifications or character."  Id. (citing Restatement (Second) of Torts § 566 (1977)).  The maker of the comment does not need "to spell out the alleged facts on which the opinion is based [where] both parties to the communication know the facts or assume their existence."  Id.  See Sherman v. Bordentown Regional School District, 23 Med. L. Rptr. 1170, 1171 (N.J. Super. Dec. 8, 1994) (granting motion to dismiss where facts supporting reporter's opinions were set forth in newspaper articles). "[P]ejorative statements of opinion are entitled to constitutional protection no matter how extreme, vituperous or vigorously expressed they may be."  Kotlikoff, 89 N.J. at 71, 444 A.2d at 1091.

-21-

Here, the facts supporting Mr. Rense's opinion that the polygraph was "embarrassingly rigged" are fully disclosed and set forth in detail in the Book. As the Complaint alleges, Mr. Sinclair states in the Book that he received a "telephone tip...that the polygraph was rigged and was arranged by Dan Parisi and Obama Campaign advisor David Axelrod." See Complaint at ¶ 25. Mr. Rense's view that the polygraph exam was "embarrassingly rigged" is the type of loose, figurative language and "rhetorical hyperbole" that has long enjoyed broad protection under the law. See Kotlikoff, 89 N.J. at 72, 444 A.2d at 1091 (holding that accusation that plaintiff engaged in a "huge coverup" and a "conspiracy" were non-actionable opinion).

Even if this were a close call - which it is not - the law favors a finding that the challenged language is an expression of non-actionable opinion. See Lynch v. New Jersey Educ. Ass'n, 161 N.J. 152, 167-168, 735 A.2d 1129, 1137 (1999) ("If a statement could be construed as either fact or opinion, a defendant should not be held liable. An interpretation favoring a finding of 'fact' would tend to 'impose a chilling effect on speech.'") (quoting Dairy Stores, Inc. v. Sentinel Publishing Co., Inc., 104 N.J. 125, 148, 516 A.2d 220, 232 (1986)).

The Foreword previews and opines on the content of the Book. The use of the term "allegedly"in the paragraph of the Foreword at issue and the tenor of the Foreword taken as a whole - as the Court must do when determining the defamatory nature of a publication - demonstrates that the Foreword was not making factual allegations but was merely opining on what Mr. Sinclair had written. As stated in the last paragraph of the Foreword:

> So, again, as you read this astonishing book, prepare to think about it honestly and logically…for it will challenge you to do just that. The Larry Sinclair story is utterly unique on the American Political Landscape. Is it true? Again, that is for you to decide. One thing I guarantee…you will never forget it.

See Foreword from the Book, attached to Exhibit B, Affidavit of Rense, as Exhibit 1.  This is precisely the type of pure opinion that is entitled to protection under the law.  The comment that Mr. Parisi was "allegedly hired" to set up an "embarrassingly rigged" polygraph examination cannot form the basis of a defamation claim.[4]

## V. CONCLUSION

For the reasons stated above, Defendant, Jeffrey Rense respectfully requests that this Motion to Dismiss be granted on the basis that this Court lacks personal jurisdiction over him, that the process served upon him by substituted service was defective and insufficient, and/or that the Complaint fails to state a claim upon which relief can be granted as to Mr. Rense.

Respectfully submitted,

_____/s/_____
JoAnne Zawitoski (D.C. Fed. Bar No. 419567)
Semmes, Bowen & Semmes, P.C.
25 South Charles Street, Suite 1400
Baltimore, Maryland 21201
Telephone No. (410) 539-5040
Facsimile No. (410) 539-5223
jzawitoski@semmes.com

*Counsel for Defendant, Jeffrey Rense*

B1034059.WPD

_____

[4]Because the libel claim fails, the remaining claims asserted against Mr. Rense – for false light invasion of privacy, business disparagement, tortious interference with economic advantage, and civil conspiracy – also fail.  For the false light claim, Plaintiffs must establish a false statement of fact, which they cannot do for the reasons discussed above.  For the business disparagement and tortious interference claims, there must be a showing that Mr. Rense made a false and disparaging statement regarding Whitehouse.com.  Under New Jersey law, civil conspiracy is not independent cause of action, but rather a liability expanding mechanism which exists only if the plaintiff can prove an underlying independent wrong.  *See* Farris v. County of Camden, 61 F.Supp.2d 307 (1999).  For the reasons discussed above, Plaintiffs cannot meet this burden.  Counts II, III, IV, and V also should be dismissed.

-23-