UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DANIEL PARISI, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 1:10-cv-0897-RJL |
| ) | |
| LAWRENCE W. SINCLAIR a/k/a "Larry Sinclair", ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

**[CORRECTED] PLAINTIFFS' RESPONSE TO SINCLAIR'S MOTION TO STRIKE EX.1 TO THEIR OPPOSITION TO AMAZON'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS MOTION TO SEAL EX. 1**

Plaintiffs, Daniel Parisi ("Parisi"), Whitehouse.com Inc., Whitehouse Network LLC ("WNL"), and White House Communications Inc. ("WCI") (collectively referred to as "plaintiffs"), hereby respond to defendant Lawrence Sinclair's ("Sinclair") motion to strike Ex. 1 to plaintiffs' opposition to the motion for summary judgment filed by defendant Amazon.com, Inc. ("Amazon"). Ex. 1 is a copy of Sinclair's June 2009 self-published book entitled *Barack Obama & Larry Sinclair: Cocaine, Sex, Lies & Murder?* (referred to as "the book" or "Sinclair's book").[1] The use of this exhibit is fully necessary to plaintiffs' case and the non-confidential book was properly filed as an exhibit. However, in a spirit of cooperation, plaintiffs cross move for an Order placing that exhibit under seal.

Sinclair's book included scurrilous allegations against President Obama, his advisor David Alexrod and the plaintiffs pertaining to drugs, sexual activity, extortion and murder. The

---

[1] The book was said to have been published by defendant Sinclair Publishing, Inc. ("SPI"), which is controlled by Sinclair. The Clerk has entered default against SPI. The printer of the book was a print on demand business.

book also contains vicious attacks on the plaintiff. (Dkt. No. 1 ¶ 32).  With motions to dismiss or for summary judgment filed by all of the defendants (except Lawrence Sinclair and SPI) Jeffrey Rense ("Rense"), Barnes & Noble, Inc. and Barnesandnoble.com LLC ("B&N"), Amazon,.com, Inc. and Books-A-Million, Inc. ("BAM").  Given the legal and factual disputes that must be decided in the coming weeks using Sinclair's book, plaintiffs believed it was necessary to provide the entire book for the Court's review in deciding the numerous dispositive motions.  Consequently, plaintiffs filed their opposition with the District Court for a proper purpose under the law, including taking zealous action on behalf of a client, all within the bounds of the law.

Sinclair contends that plaintiffs' counsel filed Ex. 1 with their opposition to Amazon's summary judgment motion (Dkt. No. 61) after the Court was closed in order to allow plaintiffs and third party websites to use the internet to download the book from Pacer.  Plaintiffs timely filed the opposition, containing Ex. 1, in late afternoon on the date that it was due by Court Order.  Everything included in the response was to provide the Court with facts and evidence to be able to reach a factually informed and well analyzed decision.  Parisi certainly did not want to give Sinclair's defamation more publicity than it has already received.  Sinclair did not try to rebut these facts or even contest them in his motion to strike.

Rense also charges – without any good faith basis – that Parisi and his counsel, Richard J. Opari, are working with bloggers to spread lies about Mr. Sinclair.  With all due respect, that dog won't hunt.  Parisi's counsel has not met with or had a substantive telephone discussion with any blogger regarding the case.  I certainly am not aware of the real names and addresses of any of those bloggers.  At one point, I posted a message on one of the discussion boards seeking information about a minor aspect of the case.  I did not receive any useful or substantive responses to my question. Since being engaged by Parisi in connection with this matter, I have

periodically skimmed certain blog postings related to the case. Occasionally, there are blog entries that seem credible. I have used a handful of those entries as exhibits in the dispositive motions phase of the case.

Sinclair baldly asserts that he is the copyright owner for his book. However, prior to his purported or botched attempt at suicide,[2] Sinclair represented to the world that the copyright was being transferred to third parties. Whether he did that or not, before the Court decides Sinclair's motion, it should decide if he still has standing to seek clarification on the copyright ownership issue.

Copyright law does not support Sinclair's motion. Courts have regarded as fair use a "reproduction of a work in legislative or judicial proceedings or reports...." House Report No. 94-1476 at 65; *see also Jartech v. Clancy*, 666 F.2d 403, 406-07 (9th Cir.1982) (copies of adult movies for use as evidence in a nuisance abatement proceeding were considered fair use).

Sinclair's citation of *Images Audio Visual Productions, Inc. v. Perini Bldg. Co.*, 91 F. Supp.2d 1075 (E.D. Mich. 2000), does not support his argument. "[T]he Court is cognizant of the risk that copyright protection might undermine the truth-seeking function of judicial and quasi-judicial proceedings. Moreover, the Court readily acknowledges the important role that the doctrine of fair use can play in minimizing this risk." *Id*. at 1086.

The book was placed in evidence to provide the Court with the context necessary to determine whether it was defamatory. It is also relevant to Sinclair's credibility. One of the foremost copyright scholars has written that "Works are customarily reproduced in various types of judicial proceedings, including obscenity and defamation actions, to say nothing of copyright

---

[2] On or about September 27, 2010, Sinclair posted a video showing him swallowing pills, implying that he was committing suicide. *See, e.g.*, http://www.rense.com/general92/lsc.htm. Since then, Sinclair has turned up very much alive.

infringement actions, and it seems inconceivable that any court would hold such reproduction to constitute infringement either by the government or by the individual parties responsible for offering the work in evidence." NIMMER ON COPYRIGHT § 13.05[D][2].

Finally, the relief sought by Sinclair is to strike Ex. 1 from plaintiffs' opposition to Amazon's summary judgment motion. The book should not be stricken as evidence in this case – it surely is the touchstone of plaintiffs' case. Therefore, while reserving all rights but in a spirit of cooperation, plaintiffs respectfully cross move for an Order placing Ex.1 to plaintiff's opposition to Amazon's motion for summary judgment under seal, subject to a subsequent Order of the Court re-designating Sinclair's as non-confidential for cause shown.

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that Sinclair's motion to strike be denied, and plaintiffs' cross motion to place Ex. 1 to plaintiffs' opposition to Amazon's motion under seal be granted, subject to a further Order of the Court re-designating Sinclair's as non-confidential.

Dated: October 21, 2010

Respectfully submitted,

/s/ Richard J. Oparil
Richard J. Oparil (D.C. Bar No. 409723)
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC 20037
(202) 457-6000
(202) 457-6315 (fax)

Kevin M. Bell
PATTON BOGGS LLP
8484 Westpark Drive
McLean, VA 22102
(703) 744-8000
(703) 744-8001 (fax)

Attorneys for Plaintiffs

- 5 -

**CERTIFICATE OF SERVICE**

I hereby certify that on October 21, 2010, a copy of the foregoing was served on counsel for the parties that have appeared in the case by the Court's ECF system and on the following by electronic mail:

>Lawrence W. Sinclair
>Sinclair Publishing, Inc.
>P.O. Box 1963
>Washington, DC 20013
>lsinclair@sinclairpublishingllc.com

>s/ Richard J. Oparil
>Richard J. Oparil (DC Bar No. 409723)