# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DANIEL PARISI, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 1:10-cv-0897-RJL |
| ) | |
| LAWRENCE W. SINCLAIR a/k/a "Larry Sinclair", ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'**
**MOTION TO ALTER OR AMEND JUDGMENT,**
**TO RECONSIDER SUMMARY JUDGMENT FOR DEFENDANT AMAZON,**
<u>**AND FOR LEAVE TO FILE A SUPPLEMENTAL COMPLAINT**</u>

Richard J. Oparil (D.C. Bar No. 409723)
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC 20037
(202) 457-6000
(202) 457-6315 (fax)

Kevin M. Bell
PATTON BOGGS LLP
8484 Westpark Drive
McLean, VA 22102
(703) 744-8000
(703) 744-8001 (fax)

Dated: June 9, 2011                    Attorneys for Plaintiffs

# TABLE OF CONTENTS

BACKGROUND ............................................................................................................................. 1

ARGUMENT .................................................................................................................................. 5

I.    Plaintiffs' Motion To Alter Or Amend The Judgment Granting Summary
Judgment To Amazon Should Be Granted. ....................................................................... 5

    A.    Amazon Acted With Actual Malice In Making Post-Litigation
Distributions Of Sinclair's Book. ...........................................................................5

    B.    The Court Should Reconsider Its Ruling That Plaintiffs' Post-Litigation
Conduct Could Be Used As Proof Of Actual Malice In June 2009 ......................12

II.    Plaintiffs Should Be Granted Leave To File A Supplemental Complaint Against
Amazon. .......................................................................................................................... 14

CONCLUSION ............................................................................................................................. 15

# **TABLE OF AUTHORITIES**

**Cases**

*Abdullah v. Sheridan Square Press, Inc.*,
    1994 WL 419847 (S.D.N.Y. May 4, 1994) ..................................................................10, 11

*Firestone v. Firestone*,
    76 F. 3d 1205 (D.C. Cir. 1996) ................................................................................................8

*Goldwater v. Ginzburg*,
    414 F.2d 324 (2d Cir. N.Y. 1969) ..........................................................................................11

*Herbert v. Lando*,
    441 U.S. 153 (1979) ...............................................................................................................16

*Hoffman v. Washington Post Co.*,
    433 F. Supp. 600 (D.D.C. 1977) ............................................................................................16

*Lerman v. Chuckleberry Pub., Inc.*,
    521 F. Supp. 228 (S.D.N.Y. 1981),
    *rev'd on other grounds*, 745 F.2d 123 (2d Cir. 1984) ...........................................................10

*Lewis v. Time Inc.*,
    83 F.R.D. 455 (E.D. Cal. 1979), *aff'd*, 710 F.2d 549 (9th Cir. 1983) .................................8, 9

*Lurie v. Mid-Atlantic Permanente Med. Group*,
    Civil Action No. 06-1386-RCL, Mem. Op. (D.D.C. May 31, 2011) ......................................15

*Mastro v. Potomac Elec. Power Co.*,
    447 F.3d 843 (D.C. Cir. 2006) ...............................................................................................15

*McFarlane v. Sheridan Square Press, Inc.*,
    91 F.3d 1501 (D.C. Cir. 1996) ...........................................................................................6, 14

*Olinger v. American Sav. & Loan Ass'n*,
    409 F.2d 142 (D.C. Cir. 1969) ...............................................................................................13

*Parisi v. Sinclair*,
    2011 WL 1206193 (D.D.C. Mar. 31, 2011) .................................................................. passim

*Spence v. Flynt*,
    647 F. Supp. 1266 (D. Wyom. 1986) ...............................................................................11, 12

*St. Amant v. Thompson*,
    390 U.S. 727 (1968) ..........................................................................................................11, 13

*United States v. Hicks*,
   283 F.3d 380 (D.C. Cir. 2002) .................................................................................17

*Weaver v. Lancaster Newspapers, Inc.*,
   926 A.2d 899 (Penn. 2007) ...............................................................................15, 16

*Weyrich v. New Republic, Inc.*,
   235 F. 3d 617 (D.C. Cir. 2001) ................................................................................15

**Rules**

Fed. R. Civ. P. 15(d) ........................................................................................................17

Fed. R. Civ. P. 59(e) ............................................................................................4, 8, 18

**Regulations**

*Public Citizen Inc. v. Mineta*, Supp. Mem. and Op. ........................................................8

**Other Authorities**

Diane M. Pisani, REPUBLICATION AS PROOF OF ACTUAL MALICE IN A PREVIOUS
   DEFAMATORY PUBLICATION: *WEAVER V. LANCASTER NEWSPAPERS, INC.*, 46 Duq. L.
   Rev. 509, 517 (2008) ................................................................................................16

RESTATEMENT (SECOND) OF TORTS § 580A ...................................................................16

RESTATEMENT (SECOND) OF TORTS § 581 ..................................................................8, 9

Plaintiffs, Daniel Parisi, Whitehouse.com Inc., Whitehouse Network LLC, and White House Communications Inc. (collectively "plaintiffs"), have respectfully moved the Court to alter or amend the June 2, 2011 final judgment pursuant to Fed. R. Civ. P. 59(e), as well as for reconsideration of the March 31, 2011 Order granting summary judgment as to defendant Amazon.com, Inc. (Dkt. No. 102), and leave to file a supplemental complaint.[1]

After Amazon was served with the complaint in this action in June 2010 and the papers filed in connection with the dispositive motions later in 2010 and early 2011, it had knowledge that Sinclair's book contained false statements about Parisi. Despite that knowledge or in reckless disregard of it, Amazon continued to sell and make new, separate and continuing distributions of that book. In fact, Amazon continues to do so today. (Ex. 1, Declaration of Richard J. Oparil ¶ 5 & Ex. 2). As of June 9, 2011, more than a year after plaintiffs filed this case, Amazon is still offering for sale Sinclair's book in Kindle, hardcover and paperback. (*Id.*). Amazon should be charged with actual malice for those subsequent distributions. Its summary judgment motion should be reconsidered and denied and plaintiffs granted leave to file a supplemental complaint to add factual allegations and a claim against Amazon.

## BACKGROUND

On May 28, 2010, plaintiffs filed this case against defendants, Lawrence W. Sinclair, Jeffrey Rense, Sinclair Publishing, Inc., Amazon.com, Inc., Barnes & Noble, Inc. and Barnesandnoble.com LLC (collectively "B&N"), Amazon, and Books-A-Million, Inc.. (Dkt. No. 1). The complaint alleges claims pertaining to Sinclair's June 2009 book (entitled *Barack Obama & Larry Sinclair: Cocaine, Sex, Lies & Murder?*) for defamation, false light invasion/misappropriation of privacy, business disparagement, and tortious interference with

---

[1] A Consent Motion to Dismiss the claims against Books-A-Million, Inc. is being filed contemporaneously with this motion.

economic advantage (¶¶ 77-82). Sinclair and B&N answered the complaint. B&N asserted a cross claim against Sinclair and Sinclair Publishing, Inc. for indemnification for liability and attorneys' fees. BAM and Rense filed motions to dismiss. Amazon answered the complaint on August 20 and filed a motion for summary judgment on September 17, 2010. On October 12, B&N also filed a summary judgment motion. On January 28, 2011, Sinclair filed a motion to dismiss or for summary judgment. He also moved to dismiss B&N's cross claim. Plaintiffs opposed the motions.

Amazon expressly limited its summary judgment motion to whether plaintiffs' claims were barred by CDA immunity. (Dkt. No. 72 at 18 n.6 ("Indeed, because it is entirely unnecessary to address common law notice-based distributor liability claims in dismissing all of Plaintiffs' claims against Amazon.com under the CDA, Amazon.com specifically reserved all argument as to any such claims."); Dkt. No. 53 at 2 n.2 ("Amazon.com limits the present motion to CDA immunity but reserves all arguments with respect to alternative grounds for dismissal of Plaintiffs' claims.")). In opposing Amazon's motion for summary judgment, plaintiffs noted that Amazon continued to offer for sale and sell Sinclair's book after the complaint and summary judgment motions had been filed. (Dkt. No. 61-1 ¶¶ 26, 31 & Exs. 6-9; Dkt. No. 61-5 ¶ 12). Amazon did not contest its continued distribution of Sinclair's book in hardcover, paperback and Kindle versions.

On March 31, 2011, the Court granted BAM's motion to dismiss and Amazon and B&N's motions for summary judgment. (Dkt. No. 102, reported at *Parisi v. Sinclair*, 2011 WL 1206193 (D.D.C. Mar. 31, 2011)). The Court found that the Communications Decency Act (CDA) barred plaintiffs' claims related to a product description of Sinclair's book. The Court also found that the Booksellers were not liable for distribution of Sinclair's book in hardcover

and paperback and Amazon's Kindle version. However, the Court expressly rejected B&N and Amazon's argument that CDA immunity extended to such distribution. *Id*. at *7 n.3 ("while B&N and Amazon rely on third-parties for their product descriptions and are therefore entitled to immunity under the CDA for the *product descriptions appearing on their website*, they are also the distributors of the books and cannot rely on CDA immunity as a defense to plaintiffs' distributor-based claims.") (emphasis in original).

But the Court went on to rule that there was no evidence of actual malice by the Booksellers at the time of publication of Sinclair's book in June 2009. The Court ruled that any post-publication/distribution knowledge could not be used to show actual malice at the time of publication. In support of its ruling, the Court cited *McFarlane v. Sheridan Square Press, Inc.*, 91 F.3d 1501, 1508 (D.C. Cir. 1996) ("Moreover, because the actual malice inquiry is subjective -- that is, concerned with the defendant's state of mind when he acted -- the inference of actual malice must necessarily be drawn solely upon the basis of the information that was available to and considered by the defendant prior to publication."). *Parisi*, 2011 WL 1206193, *7. The Court then ruled as to B&N that:

> the demand letter and draft complaint sent to B&N's general counsel, and the customer reviews posted on B&N's website -- do not establish a genuine dispute of material fact. Even assuming that such correspondence is sufficient to put a distributor on notice that a book is defamatory -- which is to say the least, highly doubtful -- both occurred *after* B&N began distribution of the Sinclair book. Our Circuit's precedent, however, requires that actual malice by a *publisher* exist at the time of publication. *McFarlane*, 91 F.3d at 1508. Obviously that requirement can be no *less* stringent for a distributor. Thus, post-publication/post-distribution correspondence cannot establish a dispute as to actual malice.

Id. at *9 (emphasis in original, footnote omitted). The Court granted summary judgment for Amazon on the same basis (even though Amazon's motion did not raise this issue). *Id.* at *10.

The Court has not ruled on the dispositive motions filed by either Rense or Sinclair. Nor has it ruled on Sinclair's motion to dismiss B&N's cross claim. Discovery has not begun.

There is no dispute that Sinclair's book was sold by Amazon in hardcopy and electronic Kindle formats. *Parisi*, 2011 WL 1206193, *3. Each sale of the Kindle version was a separate distribution. Further, unlike traditionally published books, there was no large printing of Sinclair's book that was later sold and distributed. Instead, Sinclair and Sinclair Publishing, Inc. self-published his book through a print-on-demand company, Lightning Source, Inc. *Id.* Lightning Source only printed a hard copy of the book when one was sold. As explained by Lightning Source's Chief Technology Officer,

> POD is a "green" concept. Books are printed on demand and wasted inventory is not stored and then pulped. Titles no longer have to "go out of print" if demand is slow. Digital files of the titles are stored and titles printed upon demand.

(Ex. 5, Affidavit of Phil Clark ¶ 9). He also confirmed that Sinclair's book was a print-on demand book. (*Id.* ¶ 14).

Even after being served with the complaint and various motion papers that detailed the defamatory statements in Sinclair's book and the lack of any competent corroborating evidence, Amazon has been and is distributing that book. A search of Amazon's website on June 9, 2011 shows that it is still selling the book in hardcopy and Kindle formats. (Ex. 1 ¶ 5 & Ex. 2). It also shows that customers purchased copies of the book in 2010 and 2011. (Id. & Ex. 2 pp. 10-13). With actual knowledge and in reckless disregard of the false statements, Amazon has continued to make separate distributions of the book.[2]

---

[2] Plaintiffs have not had any discovery from Amazon as to how many books have been sold since service of the complaint in this case. (Ex. 1 ¶ 6).

# ARGUMENT

I.   **PLAINTIFFS' MOTION TO ALTER OR AMEND THE JUDGMENT GRANTING SUMMARY JUDGMENT TO AMAZON SHOULD BE GRANTED.**

A Rule 59(e) motion "is discretionary" and may be granted where the District Court finds that there is an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Firestone v. Firestone*, 76 F. 3d 1205, 1208 (D.C. Cir. 1996). This Court has ruled that:

> A court has considerable discretion to alter or amend a judgment under Rule 59(e). However, doing so is an extraordinary relief that need not be granted unless the court concludes: (1) that there has been an intervening change of controlling law; (2) that new evidence is available; or (3) that amendment or alteration is needed to correct a clear error or prevent manifest injustice.

*Public Citizen Inc. v. Mineta*, Supp. Mem. and Op. [#53], Civ. Action No. 04-463(RJL) (D.D.C. July 30, 2006). Here, there would be clear error and manifest injustice would result if Amazon is not held responsible for its conduct in distributing Sinclair's book with actual malice well after this litigation was filed and Amazon knew that the book contained defamatory material.

   A.   **Amazon Acted With Actual Malice In Making Post-Litigation Distributions Of Sinclair's Book.**

This Court correctly stated that the actual malice standard requires knowledge that the alleged defamatory material was false or with reckless disregard of whether it was false or not. *Parisi*, 2011 WL 1206193, *7 (citing cases). There is no dispute that "one who only delivers or transmits defamatory matter published by a third person is subject to liability if, but only if, he knows or has reason to know of its defamatory character." RESTATEMENT (SECOND) OF TORTS § 581; *see also Lewis v. Time Inc.*, 83 F.R.D. 455, 464 (E.D. Cal. 1979) (plaintiff seeking to impose liability on a distributor for a libel which appeared in a magazine must prove that the distributor either knew of the libelous content of the article or that facts were known which

imposed a duty to investigate), *aff'd*, 710 F.2d 549 (9th Cir. 1983).  The Restatement further explains that:

> A news dealer is not liable for defamatory statements appearing in the newspapers or magazines that he sells if he neither knows nor has reason to know of the defamatory article. The dealer is under no duty to examine the various publications that he offers for sale to ascertain whether they contain any defamatory items. Unless there are special circumstances that should warn the dealer that a particular publication is defamatory, he is under no duty to ascertain its innocent or defamatory character.

RESTATEMENT § 581, comm. d, quoted in *Lewis*, 83 F.R.D. at 463.

Prior to the filing of this action, the Booksellers were made aware of the alleged defamatory statements in Sinclair's book. *Parisi*, 2010 WL 1206193, *1; Dkt. No. 1 ¶ 49.  BAM stopped selling the book.  So too did B&N approximately one month later.  By contrast, Amazon refused to stop selling Sinclair's book and it continued selling the book. (Dkt. No. 61-1 ¶¶ 26, 31 & Exs. 6-9; Dkt. No. 61-5 ¶ 12).  Amazon is **still** selling the book. (Ex. 1 ¶ 5 & Ex. 2).

In granting the summary judgment motion of B&N, the Court ruled that actual malice by a distributor must exist at the time of publication and that "post-publication/post-distribution correspondence cannot establish a dispute as to actual malice." *Parisi*, 2010 WL 1206193, *9.  The Court granted Amazon's summary judgment motion for the same reasons discussed as to B&N. (*Id*. at 20).  However, Amazon did not make the same argument as B&N; indeed, it expressly made no arguments other than those related to the CDA. (Dkt. No. 53 at 2 n.2; Dkt. No. 72 at 18 n.6).  The Court granted Amazon relief on a basis that Amazon did not even assert.  Plaintiffs respectfully request that the Court reconsider the ruling as to Amazon.

Reconsideration should also be granted because Amazon's continued distribution of Sinclair's book does show actual malice -- certainly for the distributions it made **after** it had actual knowledge of the defamation. Sinclair's book was published in June 2009.  Plaintiffs'

counsel corresponded with the Booksellers on May 28, 2010. (Dkt. No. 1 ¶ 51). The Court ruled that "post-publication/post-distribution" knowledge cannot be used to show actual malice as of the time of publication (*Parisi*, 2010 WL 1206193, *9) and plaintiffs could not use that 2010 letter to relate back to June 2009 as proof of actual malice in June 2009.

However, Amazon engaged in subsequent, separate and continuing acts of distributing Sinclair's book after plaintiffs filed suit. Thus, it had actual knowledge of the defamatory statements after that date. These subsequent, separate and continuing acts, undertaken with knowledge that the book was false or with reckless disregard of its falsity (*Parisi*, 2011 WL 1206193, *7), do constitute actual malice for which Amazon should be liable. In other words, Amazon redistributed Sinclair's book after the complaint and motions in this action were filed and Amazon had actual knowledge at that time that there were serious doubts as to the truthfulness of the statements contained in the book. Amazon therefore had actual malice and could be liable for those redistributions made in June 2010 and later. *Lerman v. Chuckleberry Pub., Inc.*, 521 F. Supp. 228, 236 (S.D.N.Y. 1981) (on motion for summary judgment, court found factual issues regarding whether distributor should have reviewed contents of magazine before redistributing those contents after commencement of the lawsuit), *rev'd on other grounds*, 745 F.2d 123 (2d Cir. 1984).

For example, in *Abdullah v. Sheridan Square Press, Inc.*, 1994 WL 419847 (S.D.N.Y. May 4, 1994), in a case related to the "October Surprise" investigation, the complaint alleged that the plaintiff, a private individual and former Jordanian army officer, was falsely accused by defendants of being an informant for the Mossad, of participation in activities of the Palestinian Liberation Organization, and of involvement in terrorist plots. He sued the author, publisher and distributor of the alleged defamatory book. The distributor, National Book Network ("NBN"),

moved to dismiss the case based on lack of actual malice. The Court denied the motion based on continued distribution of the book after NBN had knowledge of the alleged defamatory content:

> Defendant National Book Network's motion for dismissal of the complaint as against it is denied. Whatever the facts with respect to initial distribution, there is a sufficient showing that it has recently distributed copies of the book in England, with knowledge from this lawsuit of its allegedly libelous contents.

*Id*. at *2. Thus, when a distributor acquires knowledge that a book contains allegedly defamatory material and continues to distribute that book, it is then acting with actual malice and can be held liable for defamation for the continued distribution.[3]

In *Spence v. Flynt*, 647 F. Supp. 1266 (D. Wyom. 1986), the Court ruled that the "reckless disregard of the truth" part of the actual malice test means "that though the defendant may not have known the exact content of the allegedly libelous statement, it knew enough about the statement so that it should have investigated the statement's truth before distributing, or **continuing to distribute the publication**." *Id.* at 1273 (emphasis added). In that case, attorney Gerry Spence, filed suit for libel and other claims on behalf of a plaintiff against Hustler magazine, a distributor of the magazine, Park Place Market, and others. As a participant in that case, Park Place learned of a dispute between Spence and Hustler. In May 1985, Hustler published and Park Place distributed a magazine with an article critical of Spence. After the magazine was published and on sale, an investigator for Spence notified Park Place that the magazine contained an article defaming Spence, but Park Place continued to sell it. *Id*. at 1273-74.

---

[3] This ruling is consistent with well-accepted defamation law: "Repetition of another's words does not release one of responsibility if the repeater knows that the words are false or inherently improbable, or there are obvious reasons to doubt the veracity of the person quoted or the accuracy of his reports." *Goldwater v. Ginzburg*, 414 F.2d 324, 337 (2d Cir. N.Y. 1969), citing *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968).

Spence then filed his own defamation suit in state court against Hustler and Park Place based on the May 1985 article. Defendants removed the case to federal court and Spence moved to remand on the ground that Park Place was a non-diverse defendant and diversity jurisdiction did not exist. *Id*. at 1268-69. Defendants opposed remand on the ground that Park Place was fraudulently joined because the claims against Park Place were capable of resolution on summary judgment. *Id*. at 1271. They argued that Park Place did not act with actual malice in distributing the alleged defamatory article and so the case against it was capable of resolution on summary judgment. *Id*. at 1272-73.

The District Court disagreed based on Park Place's knowledge of the dispute between Hustler and Spence and its continued distribution of the May 1985 article despite such knowledge. Park Place "knew that his **continued distribution** of the magazine made him vulnerable to the possibility of future legal responsibility for its content." *Id*. at 1273-74 (emphasis added). The Court held that Park Place was not entitled to a summary judgment on the issue of actual malice and that it had not been fraudulently joined. The Court reasoned that:

> The dispute between Mr. Spence and Hustler was well-known to [Park Place]. This was simply not a case of an innocent magazine seller unwittingly disseminating allegedly libelous material. Rather, we have a distributor who possessed detailed knowledge of the ongoing bitter battle between Hustler and Spence, and who, after receiving a complaint about the magazine, failed to investigate and continued to sell it. These facts do not establish that Park Place Market lacked scienter for libel.

*Id*. at 1274.

Here, with respect to distributions after June 2010, Amazon was not an innocent bookseller. It came to have detailed knowledge of the alleged defamatory statements authored by Sinclair. It failed to investigate the truth of plaintiffs' allegations. Amazon nevertheless

continued to distribute Sinclair's book. Accordingly, Amazon acted with actual malice in its continuing distributions and can be constitutionally held liable for those distributions.

Amazon acquired knowledge of the defamatory content of Sinclair's book from this lawsuit. Plaintiffs served the complaint on Amazon on June 7, 2010. (Dkt. No. 22). Plaintiffs described why the book was defamatory in opposing the Booksellers' and Rense's dispositive motions. (Dkt. Nos. 43, 61, 69, 77). Plaintiffs' February 11, 2011 opposition to Sinclair's motion also included an extensive discussion of the book's defamatory statements, Parisi's sworn statements as to the false statements in the book, and Sinclair's utter lack of evidence supporting his allegations. (Dkt. No. 98). After those events, Amazon has no basis on which to say it lacked knowledge that the book is defamatory.

For example, the sole basis for Sinclair's allegations that Parisi arranged for a rigged polygraph examination in cooperation with the Obama presidential campaign is an anonymous telephone tip that he says he received from two Maine telephone numbers on February 25, 2008 in the middle of the night. (Dkt. No. 61 Ex. 1 at 95). In his motion to dismiss, Sinclair contended that the statement is true -- he received the alleged tip. (Dkt. No. 94 at 14). Yet, he did not come forward with any corroborating evidence as noted in plaintiffs' opposition. (Dkt. No. 98). Nor did Sinclair come forward with any supporting evidence in his reply. (Dkt. No. 100). Parisi averred the statements were false. (Dkt. No. 98-1). The Supreme Court has expressly ruled that actual malice can exist "where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call." *St. Amant*, 390 U.S. at 732; *see also Olinger v. American Sav. & Loan Ass'n*, 409 F.2d 142, 144 (D.C. Cir. 1969). Thus, by the time Sinclair filed his reply on February 17, 2011, Amazon, a party to this litigation, was well aware that the book was based on an unverified telephone tip.

Despite its knowledge, Amazon continued to sell Sinclair's book and continues to do so at the time this motion is filed.[4] (Ex. 1 ¶ 5 & Ex. 2). By continuing to distribute Sinclair's book after it acquired such knowledge, Amazon acted with actual malice. Amazon is not entitled to summary judgment for those subsequent and continuing distributions.

This result is not contrary to *McFarlane*, 91 F. 3d 1501. That case stated that "because the actual malice inquiry is subjective – that is, concerned with the defendant's state of mind **when he acted** – the inference of actual malice must necessarily be drawn solely upon the basis of the information that was available to and considered by the defendant prior to publication." *Id*. at 1508 (emphasis added). Here, plaintiffs are asserting that Amazon had actual malice when it acted to distribute Sinclair books after June 2010, not on the June 2009 date of publication. When Amazon acted to separately distribute Sinclair's book with actual knowledge or reckless disregard, Amazon had actual malice for those new, independent acts of distribution. Plaintiffs are not seeking damages from Amazon for distributions before June 2010.

In sum, Plaintiff presented evidence that Amazon continued to make distinct distributions after the filing of the lawsuit and motion practice. This is not a case where there was a mass distribution that was set in motion prior to having knowledge of the book's falsity. Distribution occurs on an order by order basis. Amazon took no steps to discontinue distribution after the lawsuit was filed. It continues to sell Sinclair's book today. As such, the final judgment granting Amazon's motion for summary judgment should be altered or amended.

---

[4] Amazon certainly knows how to stop distributing a book when it learns that it contains illegal or inappropriate content. On November 10, 2010, the Associated Press reported that Amazon was selling a Kindle self-published book entitled "The Pedophile's Guide to Love and Pleasure: a Child-lover's Code of Conduct." (Ex. 3). After being made aware of the book and the adverse publicity, Amazon stopped selling it. (Ex. 4).

**B.  The Court Should Reconsider Its Ruling That Plaintiffs' Post-Litigation Conduct Could Be Used As Proof Of Actual Malice In June 2009.**

Plaintiffs respectfully request that the Court also reconsider this portion of the ruling. The D.C. Circuit has ruled that the District of Columbia choice of law rules for defamation use the governmental interest analysis test of the Restatement (Second) of Conflict of Laws. *Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 857 (D.C. Cir. 2006); *Lurie v. Mid-Atlantic Permanente Med. Group*, Civil Action No. 06-1386-RCL, Mem. Op. (D.D.C. May 31, 2011). The law to be applied is that of the place where the plaintiff suffered injury. *Id.; see also Weyrich v. New Republic, Inc.*, 235 F. 3d 617, 626-27 (D.C. Cir. 2001) (applying D.C. law because the plaintiff worked in D.C. at the time the allegedly defamatory article was published). At the time the book was published, Parisi was a Pennsylvania resident. (Dkt. No. 69-1 ¶ 4). Thus, Pennsylvania law should be applied here.

The Pennsylvania Supreme Court has held that the republication of a statement, after the defendant receives a complaint alleging that the statement is defamatory, is relevant to whether the presence of actual malice in the initial publication. *Weaver v. Lancaster Newspapers, Inc.*, 926 A.2d 899 (Penn. 2007). The Court ruled that republication of a statement after a suit alleging defamation has been filed "would make any republication of the statement relevant to an inquiry of actual malice at the time of initial publication because it tends to indicate a disregard for the truth that may have been present at the time of initial publication." *Id*. at 905-06. *Weaver* relied on the U.S. Supreme Court's statement that:

> The existence of actual malice may be shown in many ways. As a general rule, any competent evidence, either direct or circumstantial, can be resorted to, and all the relevant circumstances surrounding the transaction may be shown, provided they are not too remote, including threats, prior or **subsequent** defamations, **subsequent** statements of the defendant, circumstances indicating the existence of rivalry, ill will, or hostility between the parties, facts tending to show a reckless

- 12 -

> disregard of the plaintiff's rights, and, in an action against a newspaper, custom and usage with respect to the treatment of news items of the nature of the one under consideration.

*Id.* at 906, quoting *Herbert v. Lando*, 441 U.S. 153, 164 n.12 (1979) (emphasis added). Thus, "subsequent acts can be relevant to the determination of previous states of mind…; a subsequent act of republication after a defendant is put on notice by a lawsuit that alleges defamation is relevant to a determination of actual malice in the initial publication." *Id; see also Hoffman v. Washington Post Co.*, 433 F. Supp. 600, 605 (D.D.C. 1977) (in granting summary judgment for the defendants, the court found that "it is significant and tends to negate any inference of actual malice on the part of the Post Company that it published a retraction of the indisputably inaccurate portions of the Mirkin article in the next day's edition of *The Washington Post*."); RESTATEMENT (SECOND) OF TORTS § 580A, comm. d. ("Republication of a statement after the defendant has been notified that the plaintiff contends that it is false and defamatory may be treated as evidence of reckless disregard."); Diane M. Pisani, REPUBLICATION AS PROOF OF ACTUAL MALICE IN A PREVIOUS DEFAMATORY PUBLICATION: *WEAVER V. LANCASTER NEWSPAPERS, INC.*, 46 Duq. L. Rev. 509, 517 (2008) ("The court's decision in *Weaver* gives public figure defamation plaintiffs the benefit of a logical presumption -- that republication of defamatory statements after notification that the statements are likely to be untrue indicates a general attitude of recklessness or indifference for the veracity of the statements that likely factored into the initial publication as well. The holding is limited in its reach, extending only to those cases where the defendant has republished the defamatory statements after being notified that they are not true. This decision enables public figure defamation cases to overcome the obstacle posed by motions for summary judgment and will put more plaintiffs before juries who can weigh the facts and ultimately determine whether actual malice existed at the time of publication."); *id.* at 519 ("Because republication logically indicates indifference for the truth, a defendant who has

such evidence presented against him is not being prosecuted unfairly. Whether that indifference extended back to the time of initial publication is a question for the jury to decide, given all of the facts.").

Here, the Court did not consider that post-lawsuit republication/redistribution by Amazon could be considered as evidence of actual malice as of June 2009, when Sinclair's book was first published and sold. Amazon "republished" Sinclair's print-on-demand book each time an order was placed, Lightening printed the book, and it was then distributed to the buyer. The same is true when Kindle editions were distributed.

Plaintiffs respectfully request that portion of the order be reconsidered and that Amazon's motion be denied.

## II. PLAINTIFFS SHOULD BE GRANTED LEAVE TO FILE A SUPPLEMENTAL COMPLAINT AGAINST AMAZON.

Plaintiffs also seek leave to file a supplemental complaint against Amazon, a copy of which is attached as Ex. 6. The proposed supplemental complaint does not add any new parties to this lawsuit. It merely supplements the existing complaint as to Amazon's conduct that occurred after the complaint was filed pertaining to Amazon's actual knowledge of the defamatory statements and its actual malice by continuing to distribute Sinclair's books in paper and Kindle versions. The supplemental complaint adds a claim against Amazon based on its separate and continuing distributions. In light of these new facts, filing a supplemental complaint is appropriate. Fed. R. Civ. P. 15(d); *see also United States v. Hicks*, 283 F.3d 380, 386 (D.C. Cir. 2002) ("The purposes to which [Rule 15(d)] is typically put support the conclusion that the appropriate bases for supplemental pleadings are new facts bearing on the relationship between the parties . . . . Rule 15(d) is used to set forth new facts that update the

original pleading or provide the basis for additional relief"). As a result, the Court should grant plaintiffs' motion for leave to file the supplemental complaint.

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court alter or amend the final judgment pursuant to Rule 59(e), reconsider and deny summary judgment for Amazon for post-litigation distributions, and grant plaintiffs leave to file a supplemental complaint.

Dated: June 9, 2011

Respectfully submitted,

/s/ Richard J. Oparil
Richard J. Oparil (D.C. Bar No. 409723)
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC 20037
(202) 457-6000
(202) 457-6315 (fax)

Kevin M. Bell
PATTON BOGGS LLP
8484 Westpark Drive
McLean, VA 22102
(703) 744-8000
(703) 744-8001 (fax)

Attorneys for Plaintiffs