UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DANIEL PARISI, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Case No. 10-897 (RJL) |
| ) | |
| LAWRENCE W. SINCLAIR A/K/A ) | |
| "LARRY SINCLAIR," *et al.*, ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION
(August 23, 2011) [#56]

Plaintiffs Daniel Parisi, White House Communication Inc., Whitehouse.com Inc., and Whitehouse Network LLC (collectively, "plaintiffs") filed a complaint against several defendants, including Jeffrey Rense ("Rense" or "defendant") and Larry Sinclair ("Sinclair"), for conduct stemming from the publication of a book written by Larry Sinclair entitled *Barack Obama & Larry Sinclair: Cocaine, Sex, Lies & Murder?*, the foreword of which Rense had written. Plaintiffs assert five counts against all defendants, including libel, false light invastion/misappropriation of privacy, business disparagement, tortious interference with economic advantage, and civil conspiracy. Defendant Rense has moved to dismiss plaintiff's complaint. After due consideration of the law and pleadings, defendant's Motion to Dismiss is GRANTED.

## BACKGROUND

In January 2008, Sinclair publicly alleged that he had used drugs and had engaged in sexual activity with then-presidential candidate Senator Barack Obama. Complaint

1

("Compl.") ¶ 21. Parisi, the owner and operator of the website Whitehouse.com, challenged Sinclair to take a polygraph regarding these allegations. *Id.* ¶ 23. Sinclair ultimately accepted the challenge, and the polygraphs were administered by certified polygraph examiner Edward Gelb. *Id.* ¶ 24. The resulting examiner's report indicated deception by Sinclair, and the findings were corroborated by two other examiners. *Id.* ¶ 26.

In June 2009, Sinclair wrote and published a book about his allegations and subsequent interactions with Parisi and Gelb entitled *Barack Obama & Larry Sinclair: Cocaine, Sex, Lies & Murder?* ("the Sinclair book"). Compl. ¶ 31. Plaintiffs contend the Sinclair book, and Rense's foreword, contain false and defamatory statements regarding Parisi and his website. *Id.* ¶¶ 32, 44. Plaintiffs allege that the defamatory statements in Rense's foreword caused plaintiffs to suffer injuries, including loss of reputation and lost business opportunities, in the District of Columbia.[1] *See* Compl. ¶¶ 33, 63, 69, 74.

While plaintiffs acknowledge that Rense is a citizen of Oregon, they allege, nevertheless, that all defendants have continuous and systematic contacts with the District of Columbia and have been conducting business there such that personal jurisdiction over all defendants, including Rense, is proper. Compl. ¶¶ 6, 14. Specifically, plaintiffs allege that Rense operates a website (Rense.com) and has a nationwide radio show. *Id.* ¶¶ 6, 33. Plaintiffs, however, do not rebut Rense's statement in his affidavit that he has never

---

[1] Plaintiffs also allege against all defendants that the defamatory statements caused Whitehouse.com to shut down in 2008. Compl. ¶ 48. This claim, however, cannot possibly apply to Rense because he did not write the foreword to the Sinclair book until February 2009, long after the injury alleged occurred.

2

traveled to or been in Washington, D.C. for business or personal reasons. Affidavit of Jeffrey Rense ("Rense Aff.") ¶ 6, Ex. B to Defendant's Mot. to Dismiss, Sept. 24, 2010.

On May 28, 2010, plaintiffs filed this lawsuit against all defendants. On September 24, 2010, defendant Rense filed a Motion to Dismiss all claims against him based on lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2), insufficiency of process pursuant to Rule 12(b)(4), and failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). For the following reasons, defendant's motion is granted for lack of personal jurisdiction.

## ANALYSIS

The plaintiffs bear the burden of establishing personal jurisdiction over the defendant. To meet this burden, the "plaintiff[s] must allege specific facts on which personal jurisdiction can be based; [they] cannot rely on conclusory allegations." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 332 F. Supp. 2d 63, 66 (D.D.C. 2004). In assessing challenges to personal jurisdiction, the Court need not treat all of plaintiffs' allegations as true, and instead "may receive and weigh affidavits and other relevant matter to assist it in determining the jurisdictional facts." *United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000).

To establish personal jurisdiction, plaintiffs must: (1) plead facts sufficient to show that jurisdiction is appropriate under the District of Columbia's long-arm statute, and (2) satisfy the "minimum contacts" demands of constitutional due process. *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995) (internal citation omitted). Under the D.C. long-arm statute, a court has specific jurisdiction over a non-resident defendant

3

if a plaintiff makes a *prima facie* showing that: the plaintiff suffered a tortious injury in the District of Columbia; the injury was caused by the defendant's act or omission outside the District of Columbia; and the defendant had one of the three enumerated contacts or "plus factors" in the long-arm statute—(1) regularly doing or soliciting business, (2) engaging in any other persistent course of conduct, or (3) deriving substantial revenue from goods used or consumed, or services rendered, in the District of Columbia. *See* D.C. Code § 13-423(a) (2010); *Lewy v. So. Poverty Law Ctr.*, 723 F. Supp. 2d 116, 123 (D.D.C. 2010). Unfortunately, plaintiffs have failed to plead facts sufficient to show that Rense had any one of the three enumerated contacts.

Although plaintiffs allege generally that all defendants have continuous and systematic contacts with D.C. and have been and are conducting business in D.C., they offer *no* evidence to support this allegation as to Rense, and such conclusory statements, alone, are of no value. Compl. ¶ 14; *see Novak-Canzeri v. Saud*, 864 F. Supp. 203, 205 (D.D.C. 1994). Rense, by comparison, has submitted a sworn statement that he has never been to the District, either for business or for pleasure, and plaintiffs do not contest this statement. Rense Aff. ¶ 6. Indeed, the only times the complaint even refers to Rense by name are in paragraphs 6, in which plaintiffs allege that Rense is a citizen of Oregon, and 33, in which plaintiffs simply allege that Rense operates a website (Rense.com) and has a nationwide radio show.[2] Compl. ¶¶ 6, 33.

---

[2] In paragraph 33, plaintiffs also allege that Rense wrote the foreword to the Sinclair book, which allegedly contains defamatory statements. Plaintiffs contend in their briefing that the Sinclair book was offered for sale and sold throughout the United States, including the District of Columbia. *See* Pls.'s Opp'n to Def.'s Mot. to Dismiss ("Pls.'s

4

Plaintiffs' suggestion that Rense's "nationwide" radio show somehow brings him under the purview of the Court is, at best, disingenuous. In his affidavit, Rense avers that the show is not only *not* syndicated but is only carried by very few radio stations, *none* of which air in the D.C. listening area.[3] Rense Aff. ¶ 14. Plaintiffs have offered *no* evidence to rebut Rense's sworn statements about the show's limited reach. Therefore, plaintiffs have utterly failed to provide evidence demonstrating any sort of "continuous and systematic contact" by Rense with the District vis-à-vis his radio show.

As to Rense's website, it is well established in our Circuit that the ability of District residents to access a defendant's website does *not*, by itself, show any "persistent course of conduct" in the District.[4] *See GET New Media Servs. Inc. v. BellSouth Corp.,*

---

Opp'n") at 2. Plaintiffs, however, offer no evidence that the Sinclair book was offered for sale or sold in the District. Further, Rense avers that he has never sold or offered the Sinclair book for sale, nor received any compensation whatsoever from sales of the book. Rense Aff. ¶¶ 27, 29. Plaintiffs also contend that Rense distributed the Sinclair book in D.C. in August 2009 "when he sent one as a gift to Obama at the White House on his birthday"; however, this contention, too, lacks evidentiary support. *See* Pls.'s Opp'n at 9. Not only do plaintiffs solely rely on an anonymous website blogger entry, but the blog shows that the inscription in the book was written by Sinclair, not Rense. Pls.' Opp'n at Ex. 1; Declaration of Richard J. Oparil at ¶ 11. In Sinclair's affidavit, he avers he inscribed the book to President Obama and also sent the book to the President. Affidavit of Lawrence W. Sinclair ¶¶ 2-3, Ex. 3 to Def.'s Reply, Nov. 18, 2010.

[3] The only other way for listeners to access Rense's show is by going to his website and clicking on the link for his radio program, which allows people to listen to live broadcasts for free in a "podcast" type of format. Rense Aff. ¶ 16. Rense avers that he has no idea who is listening to his broadcast by podcast at any time, and plaintiffs have not offered any evidence that D.C. residents have accessed the podcasts. *Id.*

[4] Plaintiffs' reliance on *Gorman v. Ameritrade Holding Corp.*, 294 F.3d 506 (D.C. Cir. 2002), to contradict this principle is misplaced. In *Gorman*, the defendant was an internet-based securities broker-dealer that conceded it did regular business online with D.C. residents and derived revenue from those customers. *Id.* at 510. The D.C. Circuit held that engaging in business with D.C. residents strictly through the medium of the internet did not ward off jurisdiction in D.C. courts. *Id.* Here, unlike in *Gorman*, there is

199 F.3d 1343, 1349 (D.C. Cir. 2000) ("[P]ersonal jurisdiction surely cannot be based solely on the ability of District residents to access the defendants' websites, for this does not by itself show any persistent course of conduct by the defendants in the District."). Indeed, for a website to constitute persistent conduct within the District, it must allow a certain level of interactivity by the user. *See Blumenthal v. Drudge*, 922 F. Supp. 44, 56 (D.D.C. 1998). Moreover, other District Judges in our Circuit have required at least some other non-internet related contacts between the defendant and the forum. *Id.* at 57 (finding "persistent conduct" where defendant maintained an interactive website accessible in the District, solicited and received contributions from the District, interviewed with C-SPAN in the District, and procured gossip from District residents); *Heroes, Inc. v. Heroes Found.*, 958 F. Supp. 1 (D.D.C. 1996) (finding "persistent conduct" where defendant maintained a website accessible in the District and placed an advertisement in the Washington Post").

In short, plaintiffs have failed to provide evidence that shows any aspect of Rense's website rises to the level of "persistent conduct" in the District. In particular, plaintiffs have not shown, for example, that the website somehow targets D.C. residents and/or has interactive forums that allow subscribers or web visitors to interact with Rense or with one another.[5] *See* Pls.' Opp'n at 12-13. In fact, website users in the District do

---

no evidence and certainly no admission of regular online business transactions between the defendant and D.C. residents.

[5] Plaintiffs contend that the Rense Radio forum link on the website allows subscribers to interact with Rense and each other, but the cited exhibits do not show that the forum is interactive. *See* Pls.'s Opp'n at Exs. 8, 18, 29. Rense acknowledges that the website did have a button that purported to be a link to a "user forum," but both he and James

not have the ability to e-mail Rense directly; failed attempts being forwarded instead to the webmaster, who is not in D.C., and Rense does not respond to those e-mails.[6] Rense Aff. ¶ 19. Thus, plaintiffs have not shown that Rense, through his website, "regularly does or solicits business" or "engages in any other persistent course of conduct . . . in the District of Columbia." D.C. Code § 13-423(a)(4).

Finally, plaintiffs' contention that Rense derives "substantial" revenue from the District of Columbia in the form of advertising sales or donations through Rense.com is

---

Cunningham, the Rense.com webmaster aver, that it was a dead link—a design flaw that was added to the website, never implemented, and eventually removed. Def.'s Reply at Exs. 10, 11.

[6] Plaintiffs even attempted to show interactivity by having its counsel purchase a semi-annual subscription from Rense.com. Hhowever, purchasing a subscription only provides access to the website's archived internet programs and the ability to listen to the podcast radio broadcasts at an increased modem speed. Rense Aff. ¶¶ 18-19. The subscription in no way allowed plaintiffs' counsel to communicate or exchange information with Rense, as "interactivity" is defined by courts in our Circuit. *See Blumenthal*, 992 F. Supp. at 56 (holding that the "constant exchange of information and direct communication" between D.C. residents and defendant's host computer constituted "the epitome of web site interactivity"). It should be noted that plaintiffs' comparison of Rense to the defendant in *Blumenthal* is unavailing. In *Blumenthal*, the court held that it had jurisdiction over defendant Matt Drudge, who had allegedly defamed two White House employees by publishing a story about them on his gossip website, the "Drudge Report." 992 F. Supp. at 57. The *Blumenthal* court held that jurisdiction existed based on several factors, which included the interactive nature of defendant's gossip website. *Id.* Unlike in the instant action, in *Blumenthal*, the defendant's website allowed users to *directly* e-mail defendant, and it was this "constant exchange of information and direct communication" with the defendant that the court emphasized as the "epitome of website interactivity." *Id.* Further, interactivity was just one of many factors that led the *Blumenthal* court to find personal jurisdiction over the defendant. The other factors included visits by the defendant to D.C. and regular mail and telephone communications with D.C. residents to gather information for defendant's website. *Id.* Here, there are no such factors. Finally, although the *Blumenthal* court relied in part on the availability of Drudge's website to D.C. residents, since then, the D.C. Circuit has held that access alone does not show any "persistent court of conduct" in the District. *See GET*, 199 F.3d at 1349.

equally unsubstantiated. There is no evidence demonstrating that Rense.com targets D.C. residents or companies for advertising sales or donations, let alone that a "substantial" amount of revenue has come from D.C. residents or companies through advertising sales or donations.[7] Pls.'s Opp'n at 14. And plaintiffs' attempt to show that Rense has derived advertising revenue is limited to exhibits of current advertisers on Rense's website, none of whom are located in D.C. Pls.'s Opp'n Exs. 8, 20, 28, 29; Rense's Aff. ¶¶ 11, 21. As to plaintiffs' contention that Rense solicits donations from D.C. through his website, their supporting exhibits consist simply of webshots from Rense.com showing that donations are accepted on the website, but not showing that D.C. residents are either targeted or even use the link.[8] Pls.'s Opp'n at Exs. 21 and 22.

In sum, plaintiffs' conclusory allegations and lack of factual evidence do not satisfy the statutory requirements necessary to establish a *prima facie* showing of personal jurisdiction.[9] Further, the Court denies plaintiffs' request for jurisdictional rediscovery because it, too, would be based on mere speculative conclusions offered by

---

[7] Indeed, Rense's donations record-keeper avers that contributions from D.C. residents during the last three years did not exceed $100. *See* Ex. 7 to Def.'s Reply.

[8] Plaintiffs also point to Rense's New Earth Health Solutions business, of which he is the sole proprietor, and claim that Rense's website enables him to sell his products nationwide, including the District of Columbia. However, plaintiffs have failed to provide any evidence that D.C. residents are targeted or have purchased the product.

[9] Although the Court need not reach the issue of due process, it is equally unlikely that plaintiffs have plead facts sufficient to establish that "the defendant's conduct and connection with the forum State [was] such that he should reasonably anticipate being hauled into court there," which would be required to satisfy the constitutional demands of personal jurisdiction. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

plaintiffs as to defendant's contacts with the District. *See FC Inv. Grp. LC v. IFX Mkts. Ltd.*, 529 F.3d 1087, 1093-94 (D.C. Cir. 2008).

## CONCLUSION

Thus, for all of the foregoing reasons, defendant's Motion to Dismiss, ECF No. 56, is GRANTED due to a lack of personal jurisdiction over defendant Rense. An appropriate order will accompany this memorandum opinion.

_____
RICHARD J. LEON
United States District Judge