UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DANIEL PARISI, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Case No. 10-897 (RJL) |
| ) | |
| LAWRENCE W. SINCLAIR A/K/A ) | |
| "LARRY SINCLAIR," *et al.*, ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION
(February 28, 2012) [#94]

Plaintiffs Daniel Parisi, White House Communications Inc., Whitehouse.com Inc., and Whitehouse Network LLC (collectively, "plaintiffs") filed a complaint against several defendants, including Larry Sinclair ("Sinclair"), for conduct stemming from the publication of a book written by Sinclair entitled *Barack Obama & Larry Sinclair: Cocaine, Sex, Lies & Murder?* ("the Sinclair book"). Plaintiffs assert five counts against all defendants, including libel, false light invasion/misappropriation of privacy, business disparagement, tortious interference with economic advantage, and civil conspiracy. Defendant Sinclair has moved to dismiss plaintiffs' complaint. After due consideration of the law and the pleadings, defendant's Motion to Dismiss is GRANTED.

## BACKGROUND

In January 2008, Sinclair publicly alleged that he had used drugs and had engaged in sexual activity with then-presidential candidate Senator Barack Obama. Complaint ("Compl.") ¶ 21, May 28, 2010. In or about February 2008, Parisi, the owner and

1

operator of the website Whitehouse.com, challenged Sinclair to take a polygraph regarding these allegations. *Id.* ¶ 23. Parisi offered to pay Sinclair $10,000 to take the polygraph and $100,000 if the polygraph showed that Sinclair was telling the truth. *Id.* Sinclair ultimately accepted the challenge, and the polygraphs were administered by certified polygraph examiner Edward Gelb. *Id.* ¶ 24. In turn, as part of a modified agreement, Whitehouse.com Inc. paid Sinclair $20,000 by check. *Id.* ¶ 23. The resulting examiner's report indicated deception by Sinclair, and the findings were corroborated by two other examiners. *Id.* ¶ 26.

Also in 2008, the Whitehouse.com website was shut down, despite the website's hope to sell the website to political and news entities. Compl. ¶ 48.

In June 2009, Sinclair published a book about his allegations and subsequent interactions with Parisi and Gelb entitled *Barack Obama & Larry Sinclair: Cocaine, Sex, Lies & Murder?*. Compl. ¶¶ 31-32. Plaintiffs contend the Sinclair book contains false and defamatory statements regarding Parisi and his website. *Id.* ¶¶ 32, 44.

On May 28, 2010, plaintiffs filed this lawsuit against all defendants. On January 26, 2011, defendant Sinclair filed a Motion to Dismiss all claims against him for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). For the following reasons, defendant's motion is GRANTED.

## STANDARD OF REVIEW

A court may dismiss a complaint or any portion of it for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, however, the Court may only consider "the facts alleged in the complaint, any

2

documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). To survive a motion to dismiss, a complainant must "plead [ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, ---U.S.---, 129 S. Ct. 1937, 1949 (2009). In evaluating a Rule 12(b)(6) motion, the Court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (internal quotation marks omitted). However, factual allegations, even though assumed to be true, must still "be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Moreover, the Court "need not accept inferences drawn by plaintiff[] if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## ANALYSIS

### I. Actual Malice

Plaintiffs contend that in June 2009, Sinclair published various defamatory statements relating to Parisi in the Sinclair book.[1] *See* Compl. ¶¶ 32, 45, 55.

---

[1] In addition to libel, plaintiffs also make a claim of false light invasion/misappropriation of privacy. When a false light claim is based upon the same factual allegations as a defamation claim, the two are analyzed identically. *Blodgett v. Univ. Club*, 930 A.2d 210, 223 (D.C. 2007) ("In fact, where the plaintiff rests both his defamation and false light claims on the same allegations, . . . the claims will be analyzed in the same

3

Specifically, the relevant alleged defamatory statements are: "the polygraph was rigged and was arranged by Dan Parisi and Obama Campaign advisor David Axelrod"; "'Axelrod and the Obama campaign had agreed to pay Dan Parisi of Whitehouse.com, $750,000 to arrange a rigged polygraph"; and "the polygraph exam was announced by the internet pornography fraud Dan Parisi." *Id.* ¶ 32; *see* Pls.' Opp'n to Sinclair's Mot. to Dismiss or for Summ. J. ("Pls.' Opp'n") at 17, Feb. 11, 2011.

> To state a cause of action for defamation, a plaintiff must allege the following:
>
> (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm.

*Blodgett*, 930 A.2d at 222. However, when the victim of the alleged defamation is a public figure, as is the case here, the defendant's fault in publishing the statement must amount to more than mere negligence; the defendant must have acted with actual malice, i.e., "with knowledge that it was false or with reckless disregard of whether it was false or not."[2] *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). Specifically, the plaintiffs must show, by clear and convincing evidence, that when the defendant published the alleged defamatory statements, they were subjectively aware that it was highly probable that the story was "(1) fabricated; (2) so inherently improbable that only a reckless person would have put [it] in circulation; or (3) based wholly on an unverified

---

manner."); *Harrison v. Wash. Post Co.*, 391 A.2d 781, 784 n.8 (D.C. 1978). Therefore, the libel claim will not be addressed separately.

[2] Plaintiffs concede for the purpose of this motion that plaintiffs are limited public figures and subject to the actual malice standard. *See* Pls.' Opp'n at 23.

4

anonymous telephone call or some other source that [plaintiff] has obvious reasons to doubt." *Lohrenz v. Donnelly*, 350 F.3d 1272, 1283 (D.C. Cir. 2003) (internal quotation marks omitted).

In their complaint, plaintiffs merely allege in a conclusory fashion that the "defamatory statements were made and published by defendants with knowledge of their falsity or with reckless disregard for their truth." Compl. ¶¶ 45, 58. The complaint contains *no* factual allegations, other than the plaintiffs' own assertions that the statements were false, *see id.* ¶ 44, suggesting that Sinclair either fabricated the story, that the story was so improbable that only a reckless person would have circulated the story, or that he acted *wholly* on an unverified anonymous telephone call. *See Lohrenz*, 350 F.3d at 1283. Indeed, the complaint cites to passages in Sinclair's book that show just the opposite. *See* Compl. ¶ 32. Although Sinclair allegedly received the information regarding the rigged polygraph and the $750,000 payment from an anonymous telephone call, the cited passages of the book state that he took steps to verify the statements made in the phone call and relied on more than just the call itself. *Id.* Specifically, Sinclair contacted Parisi asking him to confirm or deny the allegations, to which he received no response.[3] *Id.* Further, Sinclair forwarded the information to a Chicago Tribune reporter, John Crewdson, and asked him to look into the identity of the anonymous tipster. *Id.* According to the cited passages, Crewdson spoke to the tipster, who repeated the same

---

[3] Rather than respond, Parisi posted a statement on Whitehouse.com claiming that Sinclair's supporters had threatened him, removed all posts and comments about Sinclair's story from the website, changed the format of the website to require individuals to register with the website before being able to comment, and issued a stop payment of the $20,000 check Parisi previously gave to Sinclair. Compl. ¶ 32.

statements he made to Sinclair. *Id.* Because plaintiffs have failed to make factual allegations sufficient to "raise a right to relief above the speculative level," defendant's Motion to Dismiss is GRANTED. *Twombly*, 550 U.S. at 555.

## *II. Damages*

Finally, plaintiffs allege that they have suffered actual and special damages in the amount of at least $30,000,000 as a direct result of Sinclair's alleged defamatory statements. Compl. ¶¶ 48, 63, 69, 75, 81, 86. Specifically, plaintiffs allege that as "a direct and proximate result of the defamatory statements of the defendants, the Whitehouse.com website was shut down in 2008," and that "Whitehouse.com had hoped to sell the site to political/news entities, particularly during the historic 2008 presidential election year, but was unable to do so in light of the taint of Sinclair's defamation." *Id.* ¶ 48. Thus, the complaint alleges that the harm suffered by plaintiffs occurred in 2008. *Id.* Curiously, however, Sinclair did not publish the alleged defamatory statements until June 2009. *Id.* ¶ 31 Because the alleged illegal conduct did not occur until *after* the alleged harm was suffered, plaintiffs have failed to state claims upon which relief may be granted.[4] Therefore, defendant's Motion to Dismiss is GRANTED.

---

[4] Plaintiffs' allegations as to damages pertain to all counts—Counts I-V. Compl. ¶¶ 54-86. In addition, any other subsequent damages alleged by the plaintiffs for the first time in their opposition to Sinclair's Motion to Dismiss, will not be considered by this Court as they were not alleged in the complaint. *See* Pls.' Opp'n at 27-31. Further, such allegations are entirely speculative and unsupported by any factual allegations in the complaint. *See* Def.'s Reply in Support of Def.'s Mot. to Dismiss or in the Alternative Mot. for Summ. J. at 8-9, Feb. 17, 2011.

## CONCLUSION

Thus, for all of the foregoing reasons, defendant's Motion to Dismiss, ECF No. 94, is GRANTED due to a failure to state a claim upon which relief can be granted. An appropriate order will accompany this memorandum opinion.

_____
RICHARD J. LEON
United States District Judge