**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DANIEL PARISI, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 1:10-cv-0897-RJL |
| | ) |
| LAWRENCE W. SINCLAIR a/k/a "Larry Sinclair", *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO RECONSIDER ORDER DISMISSING COMPLAINT AND ALTER OR AMEND JUDGMENT AND FOR LEAVE TO FILE AN AMENDED AND SUPPLEMENTAL COMPLAINT**

Plaintiffs, Daniel Parisi, Whitehouse.com Inc., Whitehouse Network LLC, and White House Communications Inc. (collectively referred to as "plaintiffs"), have respectfully moved to reconsider the Court's February 29, 2012 Order dismissing this action as to defendants Lawrence Sinclair and Sinclair Publishing, Inc. (collectively "Sinclair" or "defendants") and to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e), and for leave to file an amended and supplemental complaint pursuant to Fed. R. Civ. P. 15.[1]  The proposed pleading is attached as Ex. 1.

If considered by the Court, the factual evidence presented by plaintiffs in their opposition to the motion to dismiss was sufficient to deny Sinclair's motion.  Plaintiffs sufficiently pled

---

[1]      The Court granted a Consent Motion to Dismiss the claims against defendants Books-A-Million, Inc. and Barnes & Noble, Inc. and Barnesandnoble.com LLC.  The Court granted summary judgment in favor of defendant Amazon.com, Inc. and granted defendant Jeffrey's Rense's motion to dismiss for lack of personal jurisdiction.  As such, the proposed amended and supplemental claims do not include claims against these parties.  Plaintiffs reserve their right to re-assert claims should the Court of Appeals reverse.

Plaintiffs previously filed a motion for leave to amend, but withdrew it because the Court denied their motion to stay.

facts that Sinclair made the defamatory statements alleged in the Complaint – both in the book and in the "Product Description" that Sinclair also wrote and published – with actual malice. The Product Description went far beyond relaying a story of an alleged tipster.  The Complaint plainly alleges that Sinclair's product description published made false and defamatory statements regarding Parisi: "You'll read how the Obama campaign **used internet porn king Dan Parisi and Ph.D. fraud Edward I. Gelb to conduct a rigged polygraph exam** in an attempt to make the Sinclair story go away. . . .  This is a staggeringly true story of how the sitting U.S. President with the help of the Mainstream Media, the Chicago Police Department, the FBI, the Delaware Attorney General and others got away with murder and more. . . ." (Complaint ¶ 35, emphasis added).  This is an affirmative statement by Sinclair, who does not attempt to qualify it by referring to any tipster.  The Complaint went on to allege that the product description is false and that Sinclair made the statements knowing that they were false or with reckless disregard as to whether they were false or not.  Further, the Complaint should not have been dismissed based on damages pleading because it alleged facts showing libel *per se*, for which damages are presumed.  The dismiss order should be reconsidered and the motion to dismiss denied.

Plaintiffs also request leave to file an amended and supplemental complaint in order to add additional factual support for its claims and to supplement the pleading with respect to Sinclair's actions after this suit was filed in May 2010.  Since that time, Sinclair has made other written and oral statements defaming Parisi and the plaintiffs, he continues to publish and distribute the defamatory book and product description, and issued a second edition of the book that repeats the defamation.

## BACKGROUND

Sinclair filed a motion to dismiss or for summary judgment; he did not limit his arguments to the pleadings, but filed declarations and documents.  (Dkt. No. 94).[2]  Plaintiffs opposed the motion and put extensive evidentiary facts in the record showing there were genuine issues of material fact in dispute. (Dkt. Nos. 98, 135).  Sinclair replied with his own evidence. (Dkt. No. 100).  The Court, however, did not consider the factual materials and treated Sinclair's motion as a motion to dismiss for failure to state a claim.

In granting Sinclair's motion to dismiss, the Court wrote that plaintiffs pled the existence of actual malice in a "conclusory fashion".  *Parisi v. Sinclair*, No. 10-897 (RJL), 2012 U.S. Dist. LEXIS 25364, *7 (D.D.C. Feb. 28, 2012), citing Complaint ¶¶ 45, 58. The Court went on to specifically rule that:

> The complaint contains *no* factual allegations, other than the plaintiffs' own assertions that the statements were false, *see id.* ¶ 44, suggesting that Sinclair either fabricated the story, that the story was so improbable that only a reckless person would have circulated the story, or that he acted *wholly* on an unverified anonymous telephone call. Indeed, the complaint cites to passages in Sinclair's book that show just the opposite. *See* Compl. ¶ 32. Although Sinclair allegedly received the information regarding the rigged polygraph and the $750,000 payment from an anonymous telephone call, the cited passages of the book state that he took steps to verify the statements made in the phone call and relied on more than just the call itself. *Id.* Specifically, Sinclair contacted Parisi asking him to confirm or deny the allegations, to which he received no response. *Id.* Further, Sinclair forwarded the information to a Chicago Tribune reporter, John Crewdson, and asked him to look into the identity of the anonymous tipster. *Id.* According to the cited passages, Crewdson spoke to the tipster, who repeated the same statements he made to Sinclair. *Id.* Because plaintiffs have failed to make factual allegations sufficient to "raise

---

[2]     Technically, Sinclair filed an Amended Answer to the Complaint before moving to dismiss (Dkt. No. 58), so his motion should have been brought under Fed. R. Civ. P. 12(c). However, the standard is the same under Rule 12(b) and (c).  *See, e.g.*, *Cedar Rapid Lodge & Suites, LLC v. JFS Dev., Inc.*, 2010 U.S. Dist. LEXIS 73687, *8-9 (N.D. Iowa July 19, 2010).

a right to relief above the speculative level," defendant's Motion to Dismiss is GRANTED.

*Id.* at *7-8 (emphasis in original, footnote and citations omitted).

This Court also dismissed the Complaint for failure to plead the existence of actual damages. *Id.* at *9. The Court refused to consider any other subsequent damages alleged by the plaintiffs for the first time in their opposition to Sinclair's motion to dismiss because they were not alleged in the complaint and that "such allegations are entirely speculative and unsupported by any factual allegations in the complaint." *Id.* at *9 n.4.

The Court granted the motion without giving plaintiffs with the opportunity to file an amended complaint.

## ARGUMENT

## I. PLAINTIFFS' MOTION TO RECONSIDER AND ALTER OR AMEND THE JUDGMENT SHOULD BE GRANTED.

A Rule 59(e) motion is discretionary and may be granted where the District Court finds that there is an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."[3] *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). Here, new evidence is available as reflected in the attached proposed amended and supplemental complaint and there would be clear error and manifest injustice would result if plaintiffs' claims against Sinclair and SPI were dismissed on a Rule 12(b)(6) motion, particularly where the dismissal did not provide plaintiffs with an opportunity to file an amended pleading.

---

[3]     Plaintiffs move to alter or amend out of an abundance of caution. The Court has not dismissed the unrepresented Sinclair Publishing, Inc. from the case. Thus, final judgment disposing of all claims has not been entered and the Court did not certify the Sinclair dismissal Order for interlocutory appeal. Plaintiffs, however, want to ensure that they do not waive any of their rights and are treating the Order as a judgment.

**A.     The Court Erred By Not Considering The Factual Evidence Presented By Plaintiffs.**

The Court erred by not considering the factual evidence presented by plaintiffs in their opposition to the motion to dismiss and its later supplement of new evidence (Dkt. Nos. 98, 135). "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d); *see also 3M Co. v. Boulter*, 2012 U.S. Dist. LEXIS 12860, *31 (D.D.C. Feb. 2, 2012) ("the Advisory Committee Notes to the 1946 Amendment clearly explain that Rule 12(d) links Rule 12 with Rule 56 to provide the exclusive means for federal courts to use to rule upon a pretrial motion to adjudicate a case on the merits based on matters outside the complaint"); *National Sec. Archive Fund, Inc. v. U.S. Dep't of the Air Force*, 2006 U.S. Dist. LEXIS 21037, *9-10 (D.D.C. Apr. 19, 2006) ("Where matters outside the pleadings are presented in a motion for judgment on the pleadings, the court must treat the motion as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.").  The Court did not treat Sinclair's motion as one for summary judgment.  The Court did not exclude factual evidence but did not consider it in deciding Sinclair's motion.  Plaintiffs respectfully request that the Court reconsider its ruling, consider the evidence and find that there are genuine issues of material fact and that Sinclair is not entitled to judgment as a matter of law under the Rule 56 standard.

**B.     The Complaint Sufficiently Alleged Actual Malice By Sinclair.**

**1.     The Complaint Adequately Pled Actual Malice As To Sinclair's Book.**

Plaintiffs sufficiently pled facts that Sinclair made the defamatory statements alleged in the Complaint – both in the book and in the "Product Description" that Sinclair also wrote and

published – with actual malice, knowledge that the statements were false or with reckless disregard as to whether they were false or not.  *See, e.g., Herbert v. Lando*, 441 U.S. 153, 156 (1979); *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968); *Clyburn v. World News Communs., Inc.*, 903 F.2d 29, 33 (D.C. Cir. 1990).  Proof of actual malice may be shown by circumstantial evidence, including obvious reasons to doubt the truth of an informant or the inherent improbability of the reports.  *See, e.g., id.* at 156-57, 160; *St. Amant*, 390 U.S. at 731; *Clyburn*, 903 F.2d at 33. A defendant's "[p]rofessions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call."  *St. Amant*, 390 U.S. at 732; *see also Stern v. Cosby*, 645 F. Supp. 2d 258, 278 (S.D.N.Y. 2009) ("Factors for a court to consider in determining whether a defendant acted with actual malice include (1) whether a story is fabricated or based on an unverified, anonymous source; (2) whether the allegations at issue 'are so inherently improbable that only a reckless person would have put them in circulation'; and (3) whether there are any obvious reasons to doubt the truthfulness of the defendant's source or the accuracy of the source's report.") (citations omitted).

The Complaint alleged that Sinclair's book "contains vicious attacked on" plaintiffs that "is replete with false, defamatory and derogatory statements" regarding plaintiffs, including that they were paid $750,000 by the Obama campaign to rig Sinclair's polygraph examination (¶ 32). The Complaint goes on to allege that the defamatory statements are false and affirmatively alleges the true facts include, *inter alia*, that:

> Plaintiffs have never discussed Sinclair or his allegations with David Axelrod or the Obama campaign, or anyone acting on their behalf.
>
> Plaintiffs have never conspired, criminally or otherwise, with Obama, the Obama campaign or Axelrod or anyone acting on their behalf.

Plaintiffs have never entered into an agreement, contract, or understanding with David Axelrod, the Obama campaign, or anyone acting on their behalf.

Plaintiffs never agreed to accept or be paid money or other benefit by David Axelrod, the Obama campaign, or anyone acting on their behalf, for any purpose.

Plaintiffs have never "made a deal with David Axelrod and the Obama campaign" for any purpose, including without limitation, to arrange a rigged polygraph examination of Sinclair.

Plaintiffs did not "rig" Sinclair's polygraph examinations.

(Complaint ¶ 44(a)-(f). Plaintiffs then plead that the statements were made with actual malice – "made and published by defendants with knowledge of their falsity or with reckless disregard for the truth. (*Id*. ¶ 45). The Complaint alleges that: "The defamatory statements were made without any evidence, direct or circumstantial, that they were true when made. Sinclair's book and the statements published by other defendants did not contain a scintilla of factual support for their wildly false and reckless untrue statements." (*Id*.). And the Complaint alleges that "[p]rior to the filing of this action, defendants knew or had reason to know of the defamatory statements." (*Id*. ¶ 47).

The Federal Rules have an "extremely liberal" pleading standard. *See, e.g., Saint-Jean v. District of Columbia*, 2012 U.S. Dist. LEXIS 29906, *4 (D.D.C. Mar. 7, 2012). A complaint requires a short and plain statement of the claims showing that plaintiffs are entitled to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The D.C. Circuit has held that "*Twombly* leaves the long-standing fundamentals of notice pleading intact." *Aktieselskabet AF 21 November 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 16 (D.C. Cir. 2008). *Twombly* itself reiterated that a complaint "does not need detailed factual allegations." 550 U.S. at 555; *see also Aktieselskabet*, 525 F.3d at 16. "[S]pecific facts are not necessary," and a

complaint need only give the defendant fair notice of the claims. *Erickson v. Pardus,* 551 U.S.89, 94 (2007) (per curiam).

In considering a Rule 12(b)(6) motion to dismiss, a court must assume that all allegations of the complaint are true, even if doubtful, and must give the plaintiff the benefit of all reasonable inference. *See, e.g.*, *Aktieselskabet*, 525 F.3d at 17; *Saint-Jean*, 2012 U.S. Dist. LEXIS 29906, *5-6; *Benz v. Washington Newspaper Pub. Co., LLC*, 2006 U.S. Dist. LEXIS 71827, *7 (D.D.C. Sept. 29, 2006). "[W]hen the Court is presented with a Rule 12(b)(6) motion to dismiss a defamation action, the Court must assume the falsity of the statements at issue and that the statements were made by the defendants with knowledge of their falsity or reckless disregard for their truth." *Benz*, 2006 U.S. Dist. LEXIS 71827, *11; *see also Southern Volkswagen, Inc. v. Centrix Financial, LLC*, 357 F. Supp. 2d 837, 843-44 (D. Md. 2005) (in a defamation case, "the Court must accept Plaintiffs' assertion regarding Defendant's knowledge of the statement's falsity. An averment of knowledge that that the statement was false is a sufficient allegation of actual malice.") (citing RESTATEMENT (SECOND) OF TORTS § 580B)). Defamation claims are not subject to the heightened pleading standard of Fed. R. Civ. P. 9(b). *See, e.g.*, *Cedar Rapid Lodge & Suites, LLC*, 2010 U.S. Dist. LEXIS 73687, *12-13.

Here, plaintiffs alleged (1) the defamatory statements in Sinclair's book, (2) a specific allegation that those statements are false, and (3) Sinclair published those statements with knowledge of their falsity or with reckless disregard for the truth and without having any evidence that they were true.  The Complaint contains a sufficient short and plain statement of the claims showing that plaintiffs are entitled to relief.  Fed. R. Civ. P. 8(a)(2).  "Under this standard, Defendants' defamation claim needs only sufficient detail to allow Plaintiffs to respond." *Cedar Rapid Lodge & Suites, LLC,* 2010 U.S. Dist. LEXIS 73687, *13; *see also*

*Doctor's Data, Inc. v. Barrett*, 2011 U.S. Dist. LEXIS 134921, *28 (N.D. Ill. Nov. 22, 2011) ("the complaint's allegations must be accepted as true (so the alleged defamatory statements must be deemed, for now, to be false").  Consequently, plaintiffs respectfully request that the dismissal as to Sinclair be reconsidered and denied.

> **2.     The Court Did Not Consider Whether Parisi Sufficiently Plead That Sinclair's Defamatory Statements In The Product Description Of His Book Were Made With Actual Malice.**

In deciding that the Complaint did not adequately allege the existence of actual malice, the Court focused on the alleged anonymous telephone tip that Sinclair allegedly received regarding a rigged polygraph and $750,000 payment to Parisi and that "the cited passages of the book state that he took steps to verify the statements made in the phone call and relied on more than just the call itself." *Parisi*, 2012 U.S. Dist. LEXIS 25364, *8.  However, the truth or falsity of whether Sinclair received a credible tip is not the only defamatory statement made by Sinclair or alleged to have been made with actual malice.  The Court did not consider those other statements in dismissing the case.

The Complaint plainly alleges that product descriptions, published on, *inter alia*, amazon.com, made false and defamatory statements regarding Parisi: "You'll read how the Obama campaign **used internet porn king Dan Parisi and Ph.D. fraud Edward I. Gelb to conduct a rigged polygraph exam** in an attempt to make the Sinclair story go away. . . .  This is a staggeringly true story of how the sitting U.S. President with the help of the Mainstream Media, the Chicago Police Department, the FBI, the Delaware Attorney General and others got away with murder and more. . . ." (Complaint ¶ 35, emphasis added; *see also* Ex. 2)  The Complaint further alleges that the "Product Description" published for the Amazon Kindle edition of Sinclair's book repeats the same false statement.  (Complaint ¶ 36; *see also* Ex. 3).  The Complaint alleges the book's product description on the Books-A-Million website "makes

- 9 -

false and defamatory statements regarding plaintiffs, including without limitation, that:  'You'll read how the Obama campaign used internet porn king Dan Parisi and Ph.D. fraud Edward I. Gelb to conduct a rigged polygraph exam in an attempt to make the Sinclair story go away.'" (Complaint ¶ 38).  Finally, the Complaint alleges that Barnes & Noble's website also promoted Sinclair's book by falsely stating that "[y]ou'll read how the Obama campaign used internet porn king Dan Parisi and Ph.D. fraud Edward I. Gelb to conduct a rigged polygraph exam in an attempt to make the Sinclair story go away."  (Complaint ¶ 39).

Sinclair's product descriptions each published the **unconditional** statement that the Obama campaign conspired with Parisi to conduct a rigged polygraph examination.   In the product description there is no qualification that Sinclair learned this alleged fact from an anonymous tipster.  Sinclair himself, affirmatively and directly, states that Parisi was used by the Obama campaign to rig Sinclair's polygraph examination.  The record is undisputed that Sinclair – not the booksellers – authored the product descriptions quoted in the Complaint.  (Ex. 4, Affidavit of Phil Clark ¶¶ 14-17; Ex. 5, Affidavit of Wendell Lotz ¶¶ 5-14).

The Complaint alleged that the product descriptions were defamatory. "The above described Sinclair's book and promotional statements (referred to as 'the defamatory statements') referred to Parisi and Whitehouse.com by name, were made of and concerning him and Whitehouse.com, and were so understood by those reading the defamatory statements." (Complaint ¶ 41).  It goes on to allege that Sinclair made his defamatory statements "without any evidence, direct or circumstantial, that they were true when made. Sinclair's book and the statements published by other defendants did not contain a scintilla of factual support for their wildly false and reckless untrue statements." (Complaint ¶ 45).   Plaintiffs also set forth the truth and why Sinclair's contentions were false:

> Plaintiffs have never discussed Sinclair or his allegations with David Axelrod or the Obama campaign, or anyone acting on their behalf.
>
> Plaintiffs have never conspired, criminally or otherwise, with Obama, the Obama campaign or Axelrod or anyone acting on their behalf.
>
> Plaintiffs have never entered into an agreement, contract, or understanding with David Axelrod, the Obama campaign, or anyone acting on their behalf.
>
> Plaintiffs never agreed to accept or be paid money or other benefit by David Axelrod, the Obama campaign, or anyone acting on their behalf, for any purpose.
>
> Plaintiffs have never "made a deal with David Axelrod and the Obama campaign" for any purpose, including without limitation, to arrange a rigged polygraph examination of Sinclair.
>
> Plaintiffs did not "rig" Sinclair's polygraph examinations.

(Complaint ¶ 44(a)-(f)).  Thus, the pleading alleged, with factual support, that the defamatory statements in the product descriptions were published with actual malice, knowledge of their falsity or with reckless disregard for their truth.  (Complaint ¶ 45).  Moreover, Sinclair's motion to dismiss or for summary judgment presents no evidence that that his defamatory statements as to the rigged polygraph examination and the Obama campaign were based on anything other than an "**unverified anonymous telephone call**", which the Supreme Court has instructed is not evidence of a defendant's good faith.  *St. Amant*, 390 U.S. at 732; see also *Stern*, 645 F. Supp. 2d at 278; *id*. at 282 ("merely reporting what another has said obviously does not insulate a reporter from liability for defamation").

Nowhere does Sinclair say that he confirmed the alleged anonymous tip.  In 2008, Sinclair sent an email to Parisi saying "I assume by your failure to reply you are denying prior knowledge of misrepresentation by Mr. Gelb and the information I received early this morning advising me that you were paid $750,000 by Axelrod associates to set me up?"  (Dkt. No. 98 Ex.

13).   In addition, Parisi made a public statement on June 18, 2008, in which he categorically denied Sinclair's charges.   Parisi said, in relevant part, that:  "I deny that I ever received any bribe at any time in regards to the tests.  The bribe allegations are outlandish and without merit." (D.I. 98 Ex. 24).   In a March 17, 2008 Globe magazine article, the polygraph examiner, Gelb, denied rigging the polygraph examination: "In his defense, Gelb tells Globe, 'I have never taken a bribe to do anything improper in my life. This is a profession based on truth, honesty, integrity. I don't think you're ever going to find me in a position to compromise that.'" (Dkt. No. 89 Ex. 2).   Thus, Sinclair was aware long before he wrote and published his book or the product description that both Parisi and Gelb denied his rigged polygraph claim.[4]

Further, his book merely states that Crewdson, a reporter, allegedly contacted the tipster and he repeated the story.  (Dkt. No. 61 Ex. 1 at 96).   Nowhere, however, does Sinclair suggest that Crewdson **confirmed** the tip to be true or the tipster credible. Sinclair's February 25, 2008 email from Crewsdon that Sinclair filed with the Court (Dkt. No. 100 Ex. 3) contradicts his allegations in the book and subsequent statements. Nowhere in the email does it say that Crewdson verified the factual accuracy of anything the alleged tipster told Sinclair. If anything Crewdson brushes off Sinclair and distances himself from Sinclair story in email.  Certainly, had a reporter confirmed that the Obama campaign or David Axelrod paid Parisi money to rig a polygraph examination, he would have published a story.  Crewdson did not write such a story, however.

Plaintiffs also have new evidence, received since the hearing on Sinclair's motion, that the alleged tipster telephone numbers belonged to Tammy J. Byrnes ("Byrnes"), who has sworn under oath that she has never spoken with Sinclair or Crewdson, did not make any anonymous

---

[4]     Parisi's assistant, Robert Braddock, has also averred that Sinclair's allegations are not true. (Ex. 6).

tip, and had no knowledge of the Obama campaign or Axelrod.  Indeed, prior to July 25, 2011, when she was contacted by an investigator for plaintiffs, she had never heard of Sinclair, Parisi or the other plaintiffs, Axelrod or Crewdson.  (Exs. 7-9).  Had Sinclair contacted Byrnes, he would have learned that she was not the alleged tipster.

There are no Federal Elections Commission ("FEC") records showing that the Obama campaign paid any money to plaintiffs or any affiliate.  Even though the alleged tipster told Sinclair to check FEC records, there is no indication that Sinclair ever bothered to check.  Publishing the product description without checking FEC records is further evidence of his actual malice.

As discussed above, on a motion to dismiss, all factual allegations in the complaint must be accepted as true and all reasonable inferences drawn in favor of the plaintiff.  Applying that standard, the Complaint certainly stated a factual basis for actual malice, which must be accepted as true in deciding the motion to dismiss.  Thus, the defamation-related claims against Sinclair relating to the product descriptions, if not the book itself, should not have been dismissed with prejudice.  Plaintiffs respectfully request that the Court reconsider its ruling and deny Sinclair's motion to dismiss.

**C.** **The Complaint Should Not Be Dismissed Because It Adequately Alleged The Basis For Presumed Damages.**

In granting Sinclair's motion to dismiss, this Court ruled that plaintiffs did not sufficiently allege that they suffered actual and special damages as a result of Sinclair's alleged defamatory statements.  *Parisi*, 2012 U.S. Dist. LEXIS 25364 at *9 & n.4.  Dismissal was error, however, because the Complaint expressly alleged libel *per se*, for which damages are presumed and is actionable without any allegation of actual damages.

The Complaint alleged that Sinclair's book accused Parisi of criminal conduct: "[t]he defamatory statements are libelous on their face, in that they expose Parisi to hatred, contempt, ridicule and obloquy because they published statements that, *inter alia*, Parisi is a pornographer, *criminally conspired* with Axelrod and the Obama campaign, *rigged* polygraph examination results, received *improper funds* from the Obama campaign or Axelrod, and assisted Obama to *get away with murder*." (Dkt. No. 1 ¶ 60, emphasis added). As discussed above, Sinclair's product description unconditionally stated that the Obama campaign conspired with Parisi and used him to conduct a rigged polygraph examination to discredit Sinclair's sex and drug assertions. (Exs. 2-3).

Count I of the Complaint charged Sinclair with libel *per se*. "(Id. ¶¶ 55-64). "[C]harges of criminal conduct are libelous *per se*." *Grossman v. Goemans*, 631 F. Supp. 972, 973 (D.D.C. 1986); *see also Farnum v. Colbert*, 293 A.2d 279, 281-82 (D.C. 1972). "[F]alse allegations of criminal conduct are libelous *per se* and thus actionable without proof of special damages." *Grossman*, 631 F. Supp. at 974; *see also Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347 (1974) (a defendant who acted with actual malice may be liable for presumed damages); *Saint-Jean*, 2012 U.S. Dist. LEXIS 29906, *41-42 ("To plead a defamation claim, a plaintiff must allege … either that the statement was actionable as a matter of law irrespective of special harm or that it publication caused the defendant special harm."); *El-Hadad v. United Arab Emirates*, 496 F.3d 658, 668 (D.C. Cir. 2007) (since the District Court found defamation *per se* under D.C. law, injury was presumed); *Southern Volkswagen, Inc.*, 357 F. Supp. 2d at 845 ("Because Plaintiffs' Complaint sufficiently alleges a per se defamatory statement, it is unnecessary for Plaintiffs to allege actual harm at this stage."); *Klayman v. Segal*, 783 A.2d 607, 614 n.4 (D.C. 2001) (statement was either "actionable as a matter of law irrespective of special harm or … its

publication caused the plaintiff special harm."); *Farnum*, 293 A.2d at 282 ("The nature of a cause of action under the theory of "slander per se" allows the court to overlook any facts relating to damages for the reason that the false words spoken inherently tend to damage a person's reputation.") (citing RESTATEMENT OF TORTS § 569 (1938)).

In *Grossman*, the plaintiffs were tax counsel to two companies and provided them with an opinion letter.  The defendant was hired by an investor to investigate the companies.  The defendant sent a letter to the SEC accusing the plaintiff of aiding and abetting or conspiring with the companies to commit fraud.  He sent a copy of the letter to an attorney and 170 other investors.  The plaintiff sued for libel *per se*.  After a bench trial, Judge Gasch ruled that the plaintiff was entitled to presumed damages even though he presented no evidence of actual damages.  *Grossman*, 631 F. Supp. at 974.

Here, Sinclair accused Parisi of criminal conduct, constituting libel *per se*.  The Complaint sought an award of presumed damages:  "As a direct and proximate result of the foregoing, Parisi has suffered *loss of reputation, shame, obloquy, mortification*, as well as lost business and opportunities, in an amount to be proven at trial in excess of $30,000,000. (Complaint ¶ 63, emphasis added).  Thus, even assuming *arguendo* that the Complaint did not adequately plead actual or special damages, it did plead presumed damages for libel *per se*. Granting Sinclair's motion to dismiss on damages is clear error and manifest injustice.

Further, plaintiffs' proposed amended and supplemental complaint expressly pleads the actual injury that Sinclair's book, product description and other subsequent defamatory statements have caused.  (Ex. 1 ¶ 68).

### D.    Dismissal With Prejudice And Without Leave To Amend Is Erroneous.

A court should reserve dismissal with prejudice for "extreme situations where the pleader has had the opportunity to cure any deficiencies but either has not or cannot do so."  *Shields v.*

*Wash. Bancorp.*, 1992 U.S. Dist. LEXIS 4177, *14 (D.D.C. Apr. 7, 1992). "Dismissal without leave to amend is proper only in 'extraordinary' cases." *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003). "In dismissing for failure to state a claim, 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995), quoting *Cook, Perkiss & Liehe v. N. Cal. Collection Service*, 911 F.2d 242, 247 (9th Cir. 1990); *see also Dist. Council 47, Am. Fed'n of State, County, & Mun. Employees v. Bradley*, 795 F.2d 310, 316 (3d Cir. 1986) ("Under its reading of the complaint, the district court at the least should have granted the plaintiffs leave to amend their complaint to provide sufficient specific factual allegations to demonstrate a causal nexus between the defendants' actions and the alleged violation of constitutional rights."); *Friedlander v. Nims*, 755 F. 2d 810, 813 (11th Cir. 1985) ("a district court should give a plaintiff an opportunity to amend his complaint rather than dismiss it when it appears that a more carefully drafted complaint might state a claim upon which relief could be granted."); *Dussouy v. Gulf Coast Investment Corp.,* 660 F.2d 594, 597-99 (5th Cir. 1981) (accord); *Horrell v. SBC Communs. Inc.*, 2006 U.S. Dist. LEXIS 15659, *15 (E.D. Tex. Feb. 16, 2006) ("where the pleadings are deficient, leave to amend the complaint is refused only if it appears to a certainty that the plaintiff cannot state a claim.").

Even when a pleading does not satisfy the heightened requirements of Fed. R. Civ. P. 9(b), which does not apply to plaintiffs' claims at issue here, a court should freely grant leave to amend. *See Firestone*, 76 F.3d at 1209 (recognizing that courts almost always grant leave to amend to cure deficiencies in pleading fraud); *Poblete v. Indymac Bank*, 657 F. Supp. 2d 86, 93 (D.D.C. 2009); *Pouth Phrasavang v. Deutsche Bank*, 656 F. Supp. 2d 196, 205-06 (D.D.C. 2009); *United States ex rel. El-Amin v. George Washington Univ.*, 2005 U.S. Dist. LEXIS 3563,

*34 (D.D.C. Feb. 25, 2005). "Complaints dismissed under Rule 9(b) are 'almost always' dismissed with leave to amend." *Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986), quoting 2A J. Moore & J. Lucas, MOORE'S FEDERAL PRACTICE ¶ 9.03 at 9-34 (2d ed. 1986).

Likewise, a complaint alleging fraud that fails to meet the particularity requirement of Rule 9(b) can be cured, and adverse judgment avoided, if the opposition to the motion to dismiss supplies the facts necessary to meet 9(b)'s requirements. *Shekoyan v. Sibley Intern. Corp.*, 217 F. Supp. 2d 59 (D.D.C. 2002) (Rule 9(b) satisfied by plaintiff's opposition to motion to dismiss because the opposition alleged twenty-two specific incidences of fraud); *El-Amin*, 2005 U.S. Dist. LEXIS 3563, *34 ("a complaint alleging fraud that fails to meet the particularity requirement of Rule 9(b) can be cured, and adverse judgment avoided, if the opposition to the motion to dismiss supplies the facts necessary to meet 9(b)'s requirements."). Here, plaintiffs' opposition to Sinclair's motion included a plethora of facts supporting Sinclair's actual malice. (Dkt. Nos. 98, 135). The opposition supplied any required factual allegations not set forth in the Complaint itself.

"In opposing defendants' motion to dismiss, plaintiffs specifically requested leave to amend should dismissal be granted, and we believe the dismissal of the complaint without granting leave to amend was an abuse of discretion." *Luce*, 802 F.2d at 56-57, citing *Foman v. Davis*, 371 U.S. 178, 182 (1962). Plaintiffs requested such an opportunity in its opposition. (Dkt. No. 98 at 31).

This Court's decision to dismiss the Complaint was based on the failure to plead facts supporting the actual malice and damages elements of a defamation claim. The Court did not find that an amended pleading would be futile in that plaintiffs could not plead any set of facts that would support the defamation claims. Plaintiffs' opposition to Sinclair's motion specifically

requested the opportunity to file an amended complaint if the Court believed that there was a pleading deficiency.  (*Id*.).  Plaintiffs' opposition also set forth facts, in the form of documents and sworn declarations, stating facts that would support the required elements and the ability to plead them.  Thus, granting the dismissal without providing an opportunity to file a corrective amended pleading ignored the record evidence and was clear error that leads to manifest injustice.  Plaintiffs respectfully request that the Order granting Sinclair's motion be reconsidered and leave to file an amended complaint be granted.

## II.    PLAINTIFFS SHOULD BE GRANTED LEAVE TO FILE AN AMENDED AND SUPPLEMENTAL COMPLAINT.

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a complaint "shall be freely given when justice so requires." The liberal amendment policy embodied in Rule 15(a) is "a mandate to be heeded," and leave should be granted unless the opposing party can demonstrate "extraordinary circumstances," such as excessive delay in the resolution of the case, bad faith on the part of the movant or undue prejudice to the non-movant. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986); *Hill v. Brush Engineered Materials, Inc.*, 383 F. Supp. 2d 814, 824 (D. Md. 2005).  "The law is well settled 'that leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999), quoting *Johnson*, 785 F.2d at 509.  Absent proof of such factors, it is an abuse of discretion to deny leave to amend. *See, e.g.*, *Hill*, 383 F. Supp. 2d at 824; *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000); *Agere Sys. Guardian Corp. v. Proxim, Inc.*, 190 F. Supp. 2d 726, 732 (D. Del. 2002).  Where possible, disputes should be resolved "comprehensively and on the merits." *Agere Sys.*, 190 F. Supp. 2d at 732.

Plaintiffs also seek leave to file a supplemental complaint to add new facts and claims against Sinclair that have occurred since the original complaint was filed in May 2010.  Filing a supplemental complaint is appropriate.  Fed. R. Civ. P. 15(d); *see also United States v. Hicks*, 283 F.3d 380, 386 (D.C. Cir. 2002) ("The purposes to which [Rule 15(d)] is typically put support the conclusion that the appropriate bases for supplemental pleadings are new facts bearing on the relationship between the parties . . . . Rule 15(d) is used to set forth new facts that update the original pleading or provide the basis for additional relief").  "Rule 15(d) motions should be viewed with the same liberal principles applicable to Rule 15(a) motions."  *Soler v. G & U, Inc.*, 103 F.R.D. 69, 73 (S.D.N.Y. 1984); *see also Gillihan v. Shillinger*, 872 F.2d 935, 941 (10th Cir. 1989) ("Leave to supplement a complaint should be liberally granted unless good reason exists for denying leave, such as prejudice to the defendants."); *All W. Pet Supply Co. v. Hill's Pet Prods. Div.*, 152 F.R.D. 202, 204 (D. Kan. 1993) ("Unless good reason exists for denying leave, such as prejudice to the defendants, leave to supplement a complaint is to be liberally granted."). "[I]t has been established that the grant of an application under Rule 15(d) is within the sound discretion of the court.  Leave to supplement should be granted if it will promote the just disposition of the case, will not cause undue prejudice or delay and will not prejudice the rights of any parties."  *Medeva Pharma Ltd. v. Am. Home Prods. Corp.*, 201 F.R.D. 103, 104 (D. Del. 2001); *see also United States v. Local 560 (I.B.T.)*, 694 F. Supp. 1158, 1187 (D.N.J.) (**"**An application for leave to supplement under Rule 15(d) is addressed to the sound discretion of the court and leave should be granted if it will promote the just disposition of the case, will not cause undue prejudice or delay or trial inconvenience and will not prejudice the rights of any parties."), *aff'd*, 865 F.2d 253 (3d Cir. 1988).

The Court should grant the requested leave here.  The proposed pleading adds factual support for the allegations in the original complaint, supplements it with events that occurred after the complaint was filed in May 2008, and raises two new claims for slander and intentional infliction of emotional distress.  It also deletes allegations pertaining to the now-dismissed claims against the booksellers and Rense (without prejudice to plaintiffs' rights).

First, the proposed pleading adds additional facts that support the allegation that Sinclair acted with actual malice, including:

- Sinclair himself assumed that Parisi would deny the rigged polygraph examination allegations (Ex. 1 ¶ 34; Dkt. No. 98 Ex. 13).

- In a March 17, 2008 Globe magazine article, Gelb denied rigging the polygraph examination.  (*Id.* ¶ 35; Dkt. No. 89 Ex. 2).  Sinclair also never contacted Gelb to check the accuracy of the alleged tip.

- On June 18, 2008, Parisi publicly denied Sinclair's allegations.  Parisi said, in relevant part, that:  "I deny that I ever received any bribe at any time in regards to the tests.  The bribe allegations are outlandish and without merit."  (*Id.* ¶ 38; D.I. 98 Ex. 24).

- Sinclair's claim that a reporter, John Crewdson, confirmed the truth of the defamatory statements is specious.  In his book, Sinclair writes" "I forwarded the information to Chicago Tribune reporter John Crewdson and asked him to look into who the tipster was.  Crewdson actually spoke to the tipster and was told the same thing."  Sinclair does not say that Crewdson confirmed the accuracy of the tip, he merely asserts that the alleged tipster said the same thing to Crewdson that he allegedly told Sinclair.  Moreover, Byrnes, the owner of the cell phone and landline used to call Sinclair, swore under oath that she was not the tipster and never spoke to Crewdson.  Also, Crewdson never told Sinclair that he confirmed that the tip was factually true and he never published a story or made any public statement to the effect that he confirmed the truth of the alleged tip.  Thus, Sinclair has no good faith basis for a subjective belief that the anonymous tip was true and he published it in his book and in subsequent statements with actual malice.  (*Id.* ¶ 57; Exs. 7-9).

- Further, Sinclair's February 25, 2008 email from Crewdson that Sinclair filed with the Court in this case, contradicts any inference that Crewdson confirmed the truth of the tipster's statements.  Nowhere in the email does it say that Crewdson verified the factual accuracy of anything the alleged tipster told Sinclair.  If anything, Crewdson brushes off Sinclair and distances himself from the Sinclair story in the email.  (*Id.* ¶ 60(d); Dkt. No. 100 Ex. 3).

- ♦ The information that Sinclair's book provides about the tip is inconsistent.  The book says that he received "**a** telephone tip" (emphasis added) at 12:48 a.m. from **two** telephone numbers.  It is unclear to how Sinclair could have one conversation with a single anonymous tipster from two different telephone numbers.  (*Id.* ¶ 58).

- ♦ Sinclair knew at the time of his publication of his book and thereafter that his drug and sex allegations against Obama were false.  There was no reason for Sinclair to believe that the Obama campaign would conspire with plaintiffs and pay him $750,000 to rig a polygraph examination.  (*Id.* ¶ 59).

- ♦ There are no Federal Election Commission (FEC) records showing that plaintiffs or anyone affiliated with them received payments from the Obama campaign.  Sinclair never checked FEC records to see if any such payments were made. (*Id.* ¶ 60(a)).

- ♦ Sinclair recklessly disregarded evidence that both Parisi and Gelb publicly denied bribe allegations more than one year before first book being published.  (*Id.* ¶ 60(b)).

- ♦ Sinclair knows that the polygraph examination was not rigged because his sex and drugs allegations against Obama are false and that is the real reason the polygraph examination showed deception.  (*Id.* ¶ 60(c)).

- ♦ The $750,000 bribe allegations involving Parisi and Axelrod to rig the polygraph test are so inherently improbable that only a reckless person would have repeated them without factual corroboration.  (*Id.* ¶ 60(e)).

- ♦ The newly discovered evidence shows that the alleged anonymous tipster had prior communications with Sinclair.  The anonymous tipster called him at his hotel room two days before the alleged anonymous tip.  This casts serious doubts on any alleged information Sinclair says he received from the tipster, why he would ever believe the allegations and whether they were in collusion in fabricating the bribe allegations to deflect criticism from Sinclair's polygraph test results.  (*Id.* ¶ 60(f); Exs. 8-9).

- ♦ The proposed pleading continues to allege defamation *per se* (and thus presumed damages), but also sets forth in factual detail the actual injury to plaintiffs caused by Sinclair.  (*Id.* ¶ 68).

These additional factual allegations show that Sinclair either knew his defamatory statements about plaintiffs were untrue or he reckless disregarded whether they were true or not. He purposely avoided reviewing FEC records, he never contacted Gelb to discuss the allegations, and he never called the owner of the telephones used to make the alleged tip.  The only possible conclusion is that Sinclair sought to purposefully avoid the truth.  As such, the proposed amended and supplemental complaint sufficiently pleads facts supporting actual malice.

Second, the amended and supplemental complaint adds allegations regarding events that occurred after June 2009, when Sinclair published his book and product description.   For example:

- ♦ Sinclair continues to sell the book today, long after this suit was filed.  (*Id.* ¶ 40; Dkt. No. 98 Exs. 26, 27; Exs. 2, 3, 10).   The book is on sale on Amazon and Sinclair's own websites.

- ♦ On July 9, 2009, after publication of his book, Sinclair did a one-hour radio interview with Rense where Parisi referred to as an Axelrod hack, they laughed about potential lawsuits regarding the book and discussed Sinclair talking to Barnes & Noble about potential book signings at their stores.   On the tape, Sinclair said:  "I'm looking forward to being sued with you and everybody else who has brought this story forward."  (*Id.* ¶ 45; Dkt. No. 98 Ex. 45; Dkt. No. 98-1 ¶ 42).

- ♦ In a June 4, 2010 interview with Rusty Humphries, Sinclair realleged and repeated defamatory statements from his book, including without limitation, the following:

  > You think that they set you with up the polygraph test before you even did it?

  > There is no doubt in my mind.  I got a phone call about 1 am on the 25th of February telling me that it was rigged.  Telling me that David Axelod of Obama for America and Parisi had an agreement to do this thing and get it out on Internet for 30 days before Super Tuesday or big primaries in March and that they told us exactly where to start looking in the FEC campaign finance reports to look for payments they would not be directly to Parisi. John Crewdson got this information called the guy, verified all of this, what the guy had said and how he came across the information.  There is not doubt in my mind that this polygraph test was rigged and other experts have said the same thing.  [*Id.* ¶ 50(b)].

- ♦ On June 8, 2010, Sinclair and SPI issued a press release referring to Parisi as a "fraud."  (*Id.* ¶ 50(c)).

- ♦ On July 28, 2010 Sinclair wrote on his website and Facebook that Parisi was an Obama lapdog:  "This $30 Million civil suit filed by Obama lap dog Dan Parisi is just another Obama ploy at damage control and it will fail."  (*Id.* ¶ 50(d)).

- ♦ In a June 9, 2011 KCEO Radio Interview, Sinclair realleged and repeated defamatory statements from his book.   Among other things, Sinclair said: "The fact that the polygraph was set up -- I had been told that it was possible. I got a phone call, uuhh what? Early morning February twenty-fifth of 2008, just before 1AM, telling me that they knew for a fact that the polygraph was fraudulent, that it had been pre-arranged,

and that it had been paid for through contact with the Obama campaign and Dan Parisi. Now Parisi's trying to sue me, saying that I've ruined his reputation." (*Id.* ¶ 50(e); audio at http://www.larrysinclair.org/2011/06/10/larry-sinclair-interview-on-the-long-live-america-program-june-9-2011-kceoradio-com).

♦   Sinclair published a second edition of the book after this litigation was filed.  On or about June 2, 2011, Sinclair posted on his website that:

> Re-Designed Limited Edition Hardcover Dust Jacket
> June 2, 2011 By Administrator
>
> With the production of the Limited 2nd Edition Hardcover of Barack Obama & Larry Sinclair: Cocaine, Sex, Lies & Murder? comes a new re-designed Dust Jacket as well.
>
> We thought it would be good to include comments and reviews made by individuals who have actually purchased and read the book on the cover for the Limited Edition Hardcover's being produced right now. Make no mistake, these Limited Edition 2nd Edition Hardcover's will be limited to total printing of ONLY 200 copies and when they are gone they are gone.

Sinclair thus has republished his defamatory statements long after he had actual knowledge that they were untrue.  (*Id.* ¶ 62).

♦   Sinclair continues to harass plaintiffs, such as by posting Parisi's home address on his website multiple times after the lawsuit was filed in Spring 2010 and in November 2011, after he knew Parisi had received death threats; Parisi was afraid for his family's life and his own. (*Id.* ¶ 66; http://www.larrysinclair.org/wp-content/uploads/2011/11/Hilton-Receipt-Feb-23-2008.pdf).

The new pleading also adds three causes of action; slander *per se*/slander (Count II), intentional infliction of emotional distress (Count VI), and public disclosure of private facts based on Sinclair's multiple disclosures of Parisi's home address at a time when Parisi was receiving death threats (Count VIII).  *See Benz*, 2006 U.S. Dist. LEXIS 71827, *26-27.  The amended and supplemental complaint also deletes the civil conspiracy claim.  (Complaint, Count V).

Granting plaintiffs leave to file will enable this case to be litigated on the merits, both the original claims pertaining to the 2009 book and product description as well as the claims based

on Sinclair's later conduct.  There are no extraordinary circumstances that would justify denying leave to file an amended and supplemental complaint.  "Instances abound in which appellate courts on review have required that leave to amend be granted after dismissal or entry of judgment."  *Dussouy v. Gulf Coast Inv. Corp.*, 660 F. 2d 594, 599 (5th Circuit 1981).  The same result should occur here.

### CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court grant plaintiffs' motion to reconsider and alter or amend the judgment and grant leave to file an amended and supplemental complaint.

Dated:  March 13, 2012

Respectfully submitted,

/s/ Richard J. Oparil
Richard J. Oparil (D.C. Bar No. 409723)
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC 20037
(202) 457-6000
(202) 457-6315 (fax)

Kevin M. Bell
PATTON BOGGS LLP
8484 Westpark Drive
McLean, VA 22102
(703) 744-8000
(703) 744-8001 (fax)

Attorneys for Plaintiffs

- 24 -

5223135